The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Leroy William STREAN, Defendant–Appellant.

No. 01CA0685.

Colorado Court of Appeals, Div. I.

Dec. 5, 2002.

Ken Salazar, Attorney General, Lauren Edelstein Park, Assistant Attorney General, Laurie A. Booras, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Law Office of Lindy Frolich, Lindy Frolich, Denver, Colorado; Jennifer L. Gedde, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge METZGER.

Defendant, Leroy William Strean, appeals the judgment of conviction entered on a jury verdict finding him guilty of one count of sexual assault on a child and one count of sexual assault on a child by one in a position of trust. He also appeals the sentence imposed under the Colorado Sex Offender Lifetime Supervision Act after the trial court found him guilty of being an habitual sex offender. We affirm.

While on a family outing at the zoo, defendant accompanied his nine-year-old nephew to the restroom and sexually assaulted him in a bathroom stall. The jury found defendant guilty as charged, and in a separate proceeding, the trial court found him guilty of being an habitual sex offender. Defendant received an indeterminate sentence of forty-eight years to life in the Department of Corrections.

I.

Defendant contends that, because the trial court refused to grant his challenges for cause against two jurors, he was deprived of his right to a fair trial and impartial jury as provided by the United States and Colorado Constitutions. We disagree.

A trial court must sustain a challenge for cause if there exists a state of mind in the prospective juror evincing animosity or bias toward the defendant or the state. However, the court is not required to dismiss a prospective juror simply because he or she has indicated a possible source of bias. *People v. Tally*, 7 P.3d 172 (Colo.App.1999). If the court is satisfied that the prospective juror will base the decision on the evidence and will follow the court's instructions, no

disqualification should occur. *People v. Drake,* 748 P.2d 1237 (Colo.1988).

■ The trial court is accorded great deference in deciding a challenge for cause. Such decisions turn on an assessment of the juror's credibility, demeanor, and sincerity in explaining his or her state of mind. Absent an affirmative showing that the trial court abused its discretion, we will not overturn such a decision. *People v. Lefebre,* 5 P.3d 295 (Colo.2000).

■ A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair. *People v. Gilbert,* 12 P.3d 331 (Colo.App.2000).

### A.

Defendant argues the first prospective juror should have been dismissed for cause because she had been sexually assaulted as a child and was undergoing counseling. We are not persuaded.

■ The prospective juror indicated on her juror questionnaire that it would "be an effort" for her to be a fair juror in a sexual assault on a child case. However, when interviewed in chambers by the trial court, the prosecutor, and defense counsel, she stated that she believed she could be impartial, that she could be fair, and that she considered herself a "real open-minded person." Further, she stated that it had "been a while" since her childhood sexual assault had "been an issue."

The trial court denied defendant's challenge for cause, finding that the prospective juror's counseling was for job-related stress, that "she could separate the facts of her case from the facts of the present case," and that she "had an understanding about what the trial process was all about."

Even though the prospective juror's childhood abuse constituted a possible source of bias, her responses to questioning showed no animosity or bias toward defendant. Thus, we find no abuse of discretion. *See People v. Lefebre, supra.*

### B.

Defendant next argues the second prospective juror should have been dismissed for cause because she expressed doubt concerning her ability to be fair. We disagree.

■ The prospective juror was interviewed in chambers because she had indicated on her juror questionnaire that her "uncle" had tried to touch her breasts when she was twelve years old. She further stated she thought she could be unbiased and fair even though "the defendant's charge was kind of an emotional issue" for her.

However, she reiterated several times during questioning by the court and both counsel that her emotions would not distract her from the task of weighing the evidence and that she could base her decision on the evidence. When asked whether her doubts about her ability to be fair were based on her past experience with her "uncle," she responded that she had thought very little about that experience.

The trial court denied defendant's challenge for cause, finding the juror "is an educated woman ... and is clearly struggling with the charge and with being a human being." Giving great deference to the trial court in its assessment of the prospective juror's explanation, we see no abuse of discretion. Her responses, taken as a whole, reflect that she was able to separate her past experience from the facts of this case and that she would base her decision on the evidence and the law. Moreover, nothing indicates that either her past experience or the nature of the charges caused her to harbor enmity or bias toward defendant. *See People v. Lefebre, supra.*

### II.

Defendant next contends the trial court violated his constitutional right to confrontation when it admitted the victim's hearsay statements pursuant to § 13–25–129, C.R.S. 2002. We disagree.

Section 13–25–129(1), C.R.S.2002, allows admission of child hearsay statements in sexual offense cases if, as relevant here, the court finds that "the time, content, and cir-

cumstances of the statement provide sufficient safeguards of reliability; and ... [t]he child ... [t]estifies at the proceedings."

■ The following factors, while not intended to be an immutable standard, may provide the trial court some guidance and direction on the question of reliability:

(1) Whether the statement was made spontaneously;

(2) whether the statement was made while the child was still upset or in pain from the alleged abuse;

(3) whether the language of the statement was likely to have been used by a child the age of the declarant;

(4) whether the allegation was made in response to a leading question;

(5) whether either the child or the hearsay witness had any bias against the defendant or any motive for lying;

(6) whether any other event occurred between the time of the abuse and the time of the statement which could account for the contents of the statement;

(7) whether more than one person heard the statement; and

(8) the general character of the child.

*People v. Bowers,* 801 P.2d 511, 521 (Colo. 1990); *People v. District Court,* 776 P.2d 1083, 1089–1090 (Colo.1989).

■ A trial court's decision to admit child hearsay statements will not be overturned absent an abuse of discretion. *People v. Underwood,* 53 P.3d 765 (Colo.App.2002).

### A.

■ The first statement was made after the victim emerged from the restroom with defendant. He was crying, very sad, and very upset. His mother separated him from defendant and began to ask him questions. The victim then told his mother that defendant had "sucked his dick." The victim's mother testified that "dick" was the word he used for penis.

The trial court concluded this statement was reliable. It found the victim had used age appropriate language, would have had no knowledge of the incident unless it had occurred, and had made the statements while crying. These factors, it noted, ensured the trustworthiness of his statement. Further, the trial court found the victim's answers were not made in response to leading questions, he did not have a bias or motive to make up a story about defendant, and his general character was truthful and honest.

The record fully supports these findings. Moreover, as to the one factor about which no findings were made, we note there is no evidence of an intervening event that might have occurred between the sexual assault and the victim's statement. Indeed, the record is clear that the statement was made immediately after the event. Thus, we find no abuse of discretion.

### B.

■ After the victim's first statement, his mother immediately contacted the police, and a detective interviewed him a day and a half later. The victim's statement to the detective formed the basis for the second admission of child hearsay.

The trial court found the victim's statement to the detective included age appropriate language. It noted he would have had no independent knowledge of the incident unless it had actually occurred, his responses were the result of nonleading questions asked by the detective, he had no motive or bias against defendant, and he had good moral character.

Once again, the record fully supports those findings. Moreover, because the record does not contain any indication that such an intervening event occurred, we reject defendant's argument that the statement was unreliable.

### C.

Defendant next argues that, because the trial court issued a single ruling combining its findings concerning each statement, his rights to confrontation and cross-examination under the United States and Colorado Constitutions were violated. We disagree.

Although separate rulings would have been preferable, because the record fully supports the requirements of § 13–25–129 and *People*

*v. Bowers, supra,* we reject defendant's argument.

### III.

Defendant asserts the trial court erred by not providing, sua sponte, a contemporaneous limiting instruction each time the victim's hearsay statements were admitted. We find no error.

In *People v. Burgess,* 946 P.2d 565 (Colo. App.1997), a division of this court held that the 1993 amendments to § 13–25–129 evidenced the General Assembly's intent to eliminate the contemporaneous instruction requirement in *People v. McClure,* 779 P.2d 864 (Colo.1989). We agree with that holding and conclude that it is dispositive of defendant's contention.

### IV.

Defendant contends the trial court violated his right to confrontation by suppressing evidence of prior bad acts with the caveat that, if he attempted to assert certain defenses, then the evidence might be admissible. We are not persuaded.

▆ A constitutional right may be impermissibly chilled when some penalty is imposed for exercising that right. *People v. Anderson,* 954 P.2d 627 (Colo.App.1997).

Here, the trial court ruled that evidence of defendant's prior similar transactions would not be admitted unless he "opened the door." For example, the court noted, the proposed evidence might be relevant to refute certain defenses, such as recent fabrication by the victim.

Defendant did not object. Thus, we review for plain error and consider whether the alleged error so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *See Harris v. People,* 888 P.2d 259 (Colo.1995).

▆ The trial court's ruling did not impose a penalty on defendant if he chose to exercise his right to present a defense. Defendant was not prevented from presenting any defenses. Rather, the court merely advised defense counsel of some potential consequences of certain strategies and thus allowed defense counsel to make informed tactical decisions. Consequently, no error, much less plain error, occurred. *See Davis v. People,* 871 P.2d 769 (Colo.1994); *People v. District Court,* 869 P.2d 1281 (Colo.1994).

### V.

Defendant asserts the trial court erred in refusing to find the act under which he was sentenced, Colorado Sex Offender Lifetime Supervision Act, § 18–1.3–1004, C.R.S.2002 (formerly § 16–13–804), to be unconstitutional. We disagree.

The Act, promulgated in 1998, sets out sentencing standards for certain sex offenses, including those at issue here, committed on or after November 1, 1998. If a defendant is sentenced to the Department of Corrections, the sentence must be for an indeterminate period of at least the minimum of the applicable presumptive range up to the defendant's natural life. And if, as here, the defendant is adjudicated as an habitual sex offender against children, the indeterminate sentence must be at least three times the upper limit of the presumptive range for the level of offense committed, up to a maximum of the defendant's natural life. After the defendant completes the minimum term of incarceration, minus any earned time credit, he or she is entitled to a hearing before the parole board.

▆ Statutes are presumed to be constitutional, and a party who asserts otherwise bears the burden of establishing the statute's unconstitutionality beyond a reasonable doubt. *People v. Baer,* 973 P.2d 1225 (Colo. 1999).

### A.

Defendant first argues the Act violates his right to procedural due process. He asserts the Act contains no provisions for review of the decisions of the Department of Corrections or of the parole board relating to a prisoner's release. We conclude his argument is premature.

■ It is axiomatic that a court should not decide a constitutional issue unless and until the issue is raised by a party to the controversy and the necessity for a decision is clear and inescapable. *People v. Lybarger,* 700 P.2d 910 (Colo.1985).

■ Defendant is not currently eligible for parole under the Act. Thus, his argument is premature, and we will not consider it. *See People v. Lybarger, supra.*

### B.

Defendant also argues the trial court's selection of the rational basis test in evaluating the constitutionality of the Act violated his right to substantive due process. We disagree.

■ Substantive due process prohibits the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty. It forbids the government from infringing upon a fundamental liberty interest, no matter what process is afforded, unless the infringement is narrowly tailored to serve a compelling state interest. *People v. Garlotte,* 958 P.2d 469 (Colo.App.1997).

■ An adult offender has no fundamental liberty interest in freedom from incarceration. *People v. Young,* 859 P.2d 814 (Colo.1993). Therefore, because no fundamental right is implicated here, and defendant has not advocated an intermediate level of scrutiny, the trial court was correct in employing the rational basis test.

■ Under this analysis, the government is required to demonstrate that the legislation bears some reasonable relationship to a legitimate governmental interest. *People v. Young, supra.*

In the Act's legislative declaration, § 18–1.3–1001, C.R.S.2002, the General Assembly stated:

The general assembly hereby finds that the majority of persons who commit sex offenses, if incarcerated or supervised without treatment, will continue to present a danger to the public when released from incarceration and supervision. The general assembly also finds that keeping all sex offenders in lifetime incarceration imposes an unacceptably high cost in both state dollars and loss of human potential. The general assembly further finds that some sex offenders respond well to treatment and can function as safe, responsible, and contributing members of society, so long as they receive treatment and supervision. The general assembly therefore declares that a program under which sex offenders may receive treatment and supervision for the rest of their lives, if necessary, is necessary for the safety, health, and welfare of the state.

■ The trial court found that the Act bears a reasonable relationship to the legitimate governmental interest of safety, *see People v. Black,* 915 P.2d 1257 (Colo.1996), by protecting society from untreated sex offenders whose recidivist tendencies present a danger to the public. We agree.

Additionally, the Act serves the legitimate governmental purposes of flexibility in rehabilitation and treatment, *see People v. Kibel,* 701 P.2d 37 (Colo.1985), and recognizes that, with treatment and supervision, many sex offenders can live as contributing members of society.

Finally, by emphasizing treatment and supervision, the Act serves the legitimate governmental purpose of minimizing unacceptably high costs in lost finances and lost human potential that result from lifetime incarceration.

Therefore, the trial court did not err either in evaluating the Act using the rational basis test or in determining that the Act bears a reasonable relationship to legitimate governmental interests. Thus, the court did not violate defendant's substantive due process rights.

### C.

Defendant further argues the Act violates equal protection because "it punishes both nonviolent and violent sex offenders the same." We disagree with his interpretation of the Act.

■ Equal protection requires like treatment of persons who are similarly situated.

*People v. Young, supra.* Persons who commit different crimes are not similarly situated. *People v. Black, supra.*

■ Equal protection problems arise only when identical criminal conduct is punished with disparate penalties. *People v. Friesen,* 45 P.3d 784 (Colo.App.2001).

■ Here, defendant's nonviolent sex offenses are not identical to those of a violent sex offender. Moreover, the penalties for nonviolent sex offenses and violent sex offenses are different. Section 18–1.3–1004(1)(b), C.R.S.2002, provides that, if a sex offender is convicted of a crime of violence, he or she shall be sentenced to an indeterminate term in the Department of Corrections of at least the midpoint of the presumptive range for the offense. However, if the sex offense is not a crime of violence, the indeterminate sentence must be at least the minimum of the presumptive range. Section 18–1.3–1004(1)(a), C.R.S.2002.

Defendant's argument does not state an equal protection challenge. His nonviolent sex offense is not identical to a violent sex offense, and the punishments for the different types of offenses are not the same. *See People v. Friesen, supra.*

Therefore, the trial court did not err in denying defendant's claim that the Act violates equal protection.

### D.

Defendant argues that the Act violates the separation of powers doctrine. We are not persuaded.

■ The judiciary has the exclusive power to impose sentences within the limits determined by the General Assembly. *People v. Pate,* 878 P.2d 685 (Colo.1994). The executive branch is responsible for carrying out the mandate of the sentence. Specifically, the Department of Corrections and parole officials set parole eligibility dates; for discretionary parole, the board determines whether to grant parole. *People v. Barth,* 981 P.2d 1102 (Colo.App.1999).

Here, defendant argues that politics will interfere with this process because a parole board, fearing partisan concerns, might not release a sex offender no matter what the facts and circumstances of the individual case. However, as the supreme court stated in *People v. Kibel, supra,* 701 P.2d at 43:

> [I]t cannot be said that substituting a judicial decision-maker for the parole board would necessarily decrease the risk that release in appropriate circumstances would be withheld erroneously from sex offenders. Like the court, the parole board is a neutral body with no interest in the outcome of the cases before it.

Therefore, the trial court did not err in concluding that the Act does not violate the separation of powers doctrine.

### VI.

Finally, defendant contends the trial court erred by not conducting an abbreviated proportionality review, pursuant to U.S. Const. amend. VIII and Colo. Const. art. II, § 20. We conclude the court conducted such a review and, therefore, find no error.

■ An abbreviated proportionality review is adequate when the crimes supporting an habitual criminal sentence include "grave and serious" offenses and the defendant is eligible for parole. *People v. Gaskins,* 825 P.2d 30 (Colo.1992). Colorado has adopted the approach in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Thus, in determining whether an offense is "grave and serious," the court considers the harm threatened or caused to the victim or society and the culpability of the offender. *People v. Deroulet,* 48 P.3d 520 (Colo.2002).

Here, defendant was found to be an habitual sex offender. Relying on *People v. Herrera,* 728 P.2d 366 (Colo.App.1986), since overruled by *Close v. People,* 48 P.3d 528 (Colo. 2002), the trial court initially found that he was not entitled to any proportionality review because his life sentence included a possibility of parole. It went on to find that, if it were to conduct a proportionality review, the underlying offenses of sexual assault on a child and sexual assault on a child by one in a position of trust were serious offenses that justified defendant's sentence.

We conclude this limited proportionality review was sufficient. As the People note, defendant's crimes are of the utmost gravity and are classified as class four and class three felonies, respectively. They involve situations in which an adult treats a vulnerable child as a tool for sexual gratification, often causing a devastating and life-long effect. Thus, we hold that sexual assault on a child and sexual assault on a child by one in a position of trust are grave and serious offenses. Additionally, we note that defendant's indeterminate sentence of forty-eight years to life was the minimum he could have received and that he is eligible for parole. Consequently, no further proportionality review is necessary.

The judgment and sentence are affirmed.

Judge MARQUEZ and Judge GRAHAM concur.