**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**John Louis DASH, Defendant–Appellant.**

**No. 03CA0285.**

Colorado Court of Appeals, Div. IV.

Aug. 12, 2004.

Certiorari Denied Jan. 10, 2005.

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2003.

288

Ken Salazar, Attorney General, Matthew D. Grove, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Samler and Whitson, P.C., Hollis A. Whitson, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge LOEB.

Defendant, John Louis Dash, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree sexual assault. He also appeals the sentence imposed upon him as a sex offender. We affirm.

Defendant's former girlfriend informed the police that defendant had forced her to have sexual intercourse with him. Defendant was charged with first degree sexual assault, a class three felony, and second degree sexual assault, a class four felony, under § 18–3–402(1)(a), (2), (4)(a), C.R.S.2003.

A jury found defendant guilty of second degree sexual assault. The trial court imposed an indeterminate sentence of five years to life in the Department of Corrections and a parole period of ten years to life under § 18–1.3–401(1)(a)(V)(C.5), C.R.S.2003.

## I. Sufficiency of the Evidence

■ Defendant contends the victim's testimony was incredible and, therefore, the evidence was insufficient to support the jury's verdict. We are not persuaded.

■ We review challenges to the sufficiency of the evidence to determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt. *Kogan v. People,* 756 P.2d 945, 950 (Colo.1988). We must give the prosecution the benefit of every reasonable inference fairly drawn from the evidence. *Kogan v. People, supra.*

■ Also, the fact finder, not an appellate court, determines the credibility of witnesses, and only when testimony is "so palpably incredible and so totally unbelievable" may we reject it as a matter of law. *Kogan v. People, supra,* 756 P.2d at 950 (quoting *People v. Franklin,* 645 P.2d 1, 4 (Colo. 1982)). Testimony is incredible as a matter of law when a "witness describes events she could not possibly have seen or that are not possible under the laws of nature." *People v. Minjarez,* 81 P.3d 348, 355 (Colo.2003). However, testimony that is merely biased, conflicting, or inconsistent is not incredible as a matter of law. *People v. Minjarez, supra.*

■ The fact finder weighs the importance of evidence and resolves any conflicts or inconsistencies in the evidence. *Kogan v. People, supra.* More than a modicum of evidence is necessary to support a conviction beyond a reasonable doubt. *Kogan v. People, supra.*

To support a verdict of second degree sexual assault, the jury was instructed it must find beyond a reasonable doubt that defendant knowingly inflicted sexual penetration, however slight and including sexual intercourse and anal intercourse, on the victim and caused the victim's submission "by any means other than physical force or physical violence, but of sufficient consequence reasonably calculated to cause submission against the victim's will." *See* §§ 18–3–401(6), 18–3–402(1)(a), (2), C.R.S.2003.

Defendant contends the victim was totally unbelievable, pointing to inconsistencies in her statements and testimony concerning the details and sequence of the events and her knowledge of his last name. Defendant also points to the victim's admitted lies.

The morning after the offense, the victim told her coworker she had already called the police, which she had not done. The victim explained she only wanted to confide in a friend, not call the police, until her coworker later helped her realize what a "serious crime" defendant had committed.

The victim also lied to the police at the hospital and in a subsequent interview by denying she had consensual sexual relations with defendant before the night of the offense; she said she did not want to be overheard by her coworker, who was also part of the victim's church community, and she was already feeling "really ugly and dirty" about herself at the hospital, but later felt the police would not help her if they knew she had lied. Ultimately, at a hearing, she admitted to prior sexual relations with defendant because she was under oath and when it "came down to it, [she] had to tell the truth."

Another time, the victim lied to the police by denying she sent photographs with a letter she wrote to defendant in jail.

Inconsistencies in testimony and admitted lies will undoubtedly be considered by a jury in determining the credibility and weight of the evidence. Here, however, they do not make the victim's testimony so palpably incredible and totally unbelievable that we must reject it outright as a matter of law. *See People v. Minjarez, supra; Kogan v. People, supra.*

Additionally, the victim's basic claim that defendant penetrated her vaginally and anally against her will on the night in question was corroborated by her daughter's testimony and evidence in the record related to the sexual assault examination performed the following morning. The detective on the case also testified it was quite common for individuals subjected to alleged sexual assaults to have memory problems and that, although

the sequence of events was not always the same during his many interviews with her, the victim was very consistent concerning the actual sexual assaults. Further, after receiving the victim's letter at the jail, defendant approached a deputy sheriff and stated very seriously, "I raped her, I almost killed her, and I pissed on her head, and she still writes me love letters."

■ Defendant contends the victim's testimony was unbelievable specifically in relation to the element of causing submission by means *other than* physical force or violence to support the class four level felony of sexual assault. *See* § 18–3–402(1)(a), (2). Here, the record includes evidence that defendant pushed, shoved, and acted forcefully against the victim and held her down with his weight, but that evidence does not negate a finding that defendant caused submission by means *other than* physical force or violence. Indeed, sexual assault, by its very nature, involves physical acts against a victim.

Viewing the evidence as a whole, the combination of defendant's yelling and obscenities, his indication to the victim that he was "taking control of the situation," his threatening behavior toward the victim's daughter, his size and presence, and his actions (including disrobing the victim, moving her around the townhome, holding her down, and urinating on her), while the victim was telling him "no," that it hurt, crying, and trying to crawl away, supports the jury's conclusion that defendant caused the victim to submit against her will by means other than physical force or violence reasonably calculated to cause her submission. *See People v. Martinez,* 36 P.3d 154 (Colo.App.2001).

Regardless of whether the victim had consented to have sex with defendant on prior occasions, the evidence and all reasonable inferences from it, when viewed in the light most favorable to the prosecution, is substantial and sufficient to support the jury's conclusion that defendant was guilty of second degree sexual assault by penetration on the night of the offense. *See People v. Martinez, supra.*

## II. Constitutionality of Sentencing Statute

Defendant contends that the Colorado Sex Offender Lifetime Supervision Act of 1998 (the Act), § 18–1.3–1001, et seq., C.R.S.2003, under which he was sentenced, is unconstitutional. Specifically, he argues it violates his rights to procedural and substantive due process and equal protection, his right to be free from cruel and unusual punishment, and the separation of powers doctrine. We disagree.

■ Statutes are presumed to be constitutional, and a party attacking the validity of a statute bears the burden of establishing unconstitutionality beyond a reasonable doubt. *People v. Hickman,* 988 P.2d 628 (Colo.1999); *People v. Baer,* 973 P.2d 1225 (Colo.1999).

### A. Substantive Due Process

■ Defendant first asserts that the Act violates his constitutional right to substantive due process. He urges us to apply a strict scrutiny analysis because in his view, the Act is essentially a civil commitment statute designed to address future dangerousness, not past conduct and, as such, is subject to limits on preventive detention. We are not persuaded.

■ Substantive due · process prohibits the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty. It forbids the government from infringing upon fundamental liberty interests, no matter what process is afforded, unless such infringement is narrowly tailored to serve a compelling state interest. *People v. Garlotte,* 958 P.2d 469 (Colo.App.1997).

■ When no fundamental right is implicated, a statute is evaluated under a rational basis test. An adult criminal offender has no fundamental liberty interest in freedom from incarceration. *People v. Young,* 859 P.2d 814 (Colo.1993). Classification of sex offenders under the Act neither creates a suspect class nor infringes upon a fundamental right. *See People v. Kibel,* 701 P.2d 37 (Colo.1985)(considering Colorado Sex Offender Act of 1968).

In *People v. Strean,* 74 P.3d 387 (Colo.App. 2002), and again in *People v. Oglethorpe,* 87 P.3d 129 (Colo.App.2003), divisions of this court rejected claims that the defendants' rights to substantive due process were violated by the Act. Both divisions applied the rational basis test. Under that test, the state must demonstrate that the legislation bears some reasonable relationship to a legitimate governmental interest. *People v. Young, supra.*

In *People v. Strean, supra,* the division concluded the Act bears a reasonable relationship to the legitimate governmental interest of safety; serves legitimate governmental purposes of flexibility in rehabilitation and treatment; and recognizes that, with treatment and supervision, many sex offenders can live as contributing members of society. The division added that the Act's emphasis on treatment and supervision serves the legitimate governmental purpose of minimizing unacceptably high costs in lost finances and human potential that result from lifetime incarceration.

More recently, in *People v. Oglethorpe, supra,* the division concluded the Act serves legitimate governmental interests of protecting the public from untreated sex offenders and rehabilitating and treating those offenders.

We agree that the rational basis test applies to defendant's substantive due process challenge to the Act and that the Act satisfies that test.

█ Further, we reject defendant's contention that the Act is like a civil commitment statute in either form or function. Civil commitment statutes allow for an individual, under certain circumstances, to be confined to a mental health facility or subjected to varying degrees of supervision for an indefinite period, even though that individual has not engaged in any form of criminal conduct. *See* §§ 27–10–105 to 27–10–109, C.R.S.2003. By contrast, the Act is part of Colorado's sentencing scheme in criminal cases and applies only to defendants who committed statutorily enumerated sex offenses. Sections 18–1.3–401(1)(a)(V)(C.5), 18–1.3–1003(5), C.R.S.2003.

Moreover, "[n]o penal or punitive considerations underlie the state's interest" in civil commitment, which is designed to address not criminal conduct, but instead the present and future mental health and well-being of the mentally ill individual. *Gilford v. People,* 2 P.3d 120, 125 (Colo.2000)(quoting *People v. Chavez,* 629 P.2d 1040, 1048 (Colo.1981)). However, sex offenders have been convicted of crimes that society regards as particularly heinous, and the state has a greater interest in protecting the public from convicted sex offenders than from involuntary civil committees. *See People v. Kibel, supra* (distinguishing sex offenders under Colorado Sex Offenders Act of 1968 from involuntary civil committees, criminal defendants found not guilty by reason of insanity, and criminal defendants found incompetent to proceed)(citing *People v. White,* 656 P.2d 690 (Colo.1983)). The interests underlying the Act, namely protection of the public and rehabilitation, treatment, and punishment of convicted offenders, are all recognized purposes of criminal sentencing. *See* § 18–1–102.5, C.R.S.2003.

We are not persuaded by the cases defendant cites involving civil commitment statutes. In *Kansas v. Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), for example, while the petitioner had been convicted of a sexually violent offense, the procedures at issue were not part of the criminal proceedings under which he was convicted and sentenced for that crime. Rather, the statute set forth involuntary civil commitment procedures to be applied when the petitioner was scheduled for release from his criminal sentence. *Kansas v. Hendricks, supra* (statute also set forth procedures for involuntary civil commitment of persons charged with sexually violent offenses but found incompetent to stand trial and those found not guilty of sexually violent offenses by reason of insanity or mental disease or defect). Here, the Act provides for an indeterminate sentence of imprisonment and parole imposed upon conviction of a sex offense pursuant to criminal proceedings. It is the legislature's prerogative to enact such a statute. *See Martinez v. People,* 69 P.3d 1029 (Colo.2003); *see also* § 18–1.3–1006(1)(b), C.R.S.2003 (upon completion of minimum pe-

riod of incarceration, if sex offender is released on parole, "sex offender's sentence to incarceration shall continue and shall not be deemed discharged until such time as the parole board may discharge the sex offender from parole").

Defendant also urges us to consider the standard set forth in *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). However, that case involved the petitioner's commitment for an indefinite period based on the incompetency to stand trial, rather than a sentence upon criminal conviction as here.

### B. Procedural Due Process

■ Defendant next asserts the Act violates his right to procedural due process. We disagree.

■ Procedural due process involves the manner in which state action occurs and requires notice and a fair opportunity to be heard. It is a flexible standard, which recognizes that not all situations calling for procedural safeguards require the same procedure. *People v. Garlotte, supra.*

Here, again, defendant's argument is premised on his claim that the Act is a civil commitment statute, which we already have rejected.

To the extent defendant asserts the Act violates his right to procedural due process at sentencing, that claim was not raised in the trial court, and we will not address it. *See People v. Cagle*, 751 P.2d 614 (Colo.1988)(appellate court will not consider constitutional issues raised for first time on appeal). However, we note the record shows defendant was provided an opportunity to be heard at the time of sentencing. *See People v. Oglethorpe, supra.* Although a jury found defendant guilty beyond a reasonable doubt of second degree sexual assault, at the sentencing hearing defendant maintained his innocence and pointed out that the jury did not find he had used physical force or violence in committing the crime and that his criminal record, which included three prior felonies, did not include any violent crimes.

■ We also reject defendant's claim that he has a right to parole review before he completes his entire minimum term of imprisonment. Parole is a privilege, not a matter of right. *Turman v. Buckallew*, 784 P.2d 774 (Colo.1989). As is its prerogative, the General Assembly determined that sex offenders shall serve a minimum prison sentence prior to consideration for parole. *See* § 18–1.3–1006; *Martinez v. People, supra.*

Further, contrary to defendant's contention, his claims concerning review procedures applicable after completion of the minimum prison sentence are premature because he is not yet eligible for parole. *See People v. Kibel, supra* (party does not have standing to challenge constitutionality of a statute unless that party is directly affected by the alleged constitutional defect); *People v. Strean, supra.* Thus, we decline to consider those claims. We note, however, that in *Oglethorpe*, the division determined that the opportunity for review by the parole board at least once every three years was sufficient to meet the continuing procedural due process requirements.

### C. Equal Protection

Defendant also contends the Act violates his right to equal protection under a fundamental rights analysis and a disparate treatment analysis. He argues there is "no judicial fact-finding about the person's future dangerousness, no periodic judicial reviews, and no other mechanisms that demonstrate a tailoring of the Act's provisions to suit the individual whose liberty is deprived." He also argues "the Act imposes the same harsh sentencing for all sex offenders regardless of the level of violence used, the history of the offender, his or her mental condition and prospects for rehabilitation, and his or her propensity towards dangerousness," and that the legislature has "failed to rationally distinguish between isolated sex offenses as in this case, and crimes like first degree assault or second degree murder." He contends that his fundamental right to liberty is at issue, and we should thus consider his constitutional challenge under the standard of strict scrutiny or, alternatively, under an "intermediate level of scrutiny" because "lifetime imprisonment is akin to a civil commitment."

Aside from defendant's repeated effort to characterize the Act as a civil commitment

statute, which we reject, his equal protection challenges to the Act are essentially the same as those rejected in *People v. Oglethorpe, supra,* and *People v. Strean, supra.* We find those cases dispositive and decline defendant's invitation to readdress this issue. *See also People v. Fritschler,* 87 P.3d 186 (Colo.App.2003).

### D. Cruel and Unusual Punishment

■ Defendant also contends the Act is unconstitutional because it imposes cruel and unusual punishment. We disagree.

■ The constitutional prohibition against cruel and unusual punishment forbids extreme sentences that are "grossly disproportionate" to the crime. *People v. Oglethorpe, supra,* 87 P.3d at 135 (quoting *People v. Mershon,* 874 P.2d 1025 (Colo.1994)).

■ When the crime committed is serious, the court undertakes an abbreviated proportionality review and considers only the gravity of the offense and the sentence imposed, with great deference to the General Assembly's authority to establish punishments for crimes. *People v. Oglethorpe, supra.*

Defendant broadly argues that, in Colorado, the only other crimes for which a person can be "deprived of liberty" for the rest of his or her natural life are first degree murder and kidnapping involving bodily injury, which are "qualitatively different" and "more serious" than those covered by the Act.

However, sex offenses are considered particularly heinous crimes, *People v. Kibel, supra,* and the General Assembly has determined that sex offenders present a continuing danger to the public and that a program providing for lifetime treatment and supervision of sex offenders is necessary for the safety, health, and welfare of the state. *See* § 18-1.3-1001. Thus, defendant's crime is serious and allows for a limited proportionality review.

Defendant's presumptive range sentence of five years imprisonment is not disproportionate to his conviction of second degree sexual assault, a class four felony. Further, indeterminate sentencing of sex offenders does not in and of itself amount to cruel and unusual punishment. *See People v. White, supra.*

### E. Separation of Powers

Defendant's final contention is that the Act violates the separation of powers doctrine because the decision whether to release a prisoner lies with the parole board, a part of the executive branch susceptible to harmful political pressure, rather than with the judiciary.

His argument on this issue is in essence identical to that rejected in *People v. Oglethorpe, supra,* and *People v. Strean, supra.* We agree with those holdings and conclude they are dispositive of the issue here.

### F. Other Arguments

■ To the extent defendant raised other arguments in the trial court attacking the constitutionality of the Act, he has not pursued them on appeal, and thus, we deem them abandoned. *See People v. Hall,* 87 P.3d 210 (Colo.App.2003).

The judgment and sentence are affirmed.

Judge ROY and Judge VOGT concur.