The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
June 14, 2018

**2018COA85**

**No. 15CA0867, People v. Sabell — Criminal Law — Jury
Instructions — Defenses — Involuntary Intoxication**

A division of the court of appeals considers whether a jury
instruction improperly lessened the People's burden of disproving a
defendant's affirmative defense of involuntary intoxication.  An
instruction directed the jury to answer an initial question — "Was
the defendant's intoxication self-induced?" — either "yes" or "no."
The jury was further instructed to consider the remainder of the
intoxication instruction only if it answered that preliminary
question in the negative.  The division concludes that the
instruction was erroneous because it effectively told the jury not to
consider the People's burden of proof until after it first decided
whether the defendant's intoxication was voluntary.  However,
because the error was not plain, it does not require reversal.

Additionally, the division rejects the defendant's contentions that (1) reversal is required due to an erroneous limiting instruction and (2) his sentence under section 18-1.3-1004, C.R.S. 2017, of the Colorado Sex Offender Lifetime Supervision Act of 1998 is unconstitutional. However, the division concludes that (1) the defendant's conviction for unlawful sexual contact should merge into his conviction for sexual assault and (2) a $500 crime against a child surcharge was erroneously imposed.

Accordingly, the division vacates the unlawful sexual contact conviction and the $500 surcharge, and remands for the trial court to correct the mittimus. In all other respects, the division affirms the judgment and sentence.

COLORADO COURT OF APPEALS **2018COA85**

Court of Appeals No. 15CA0867
Jefferson County District Court No. 14CR379
Honorable Tamara S. Russell, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Sean Michael Sabell,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART AND VACATED IN PART, SENTENCE
AFFIRMED IN PART AND VACATED IN PART, AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE TAUBMAN
Bernard and Welling, JJ., concur

Announced June 14, 2018

Cynthia H. Coffman, Attorney General, Erin K. Grundy, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Meghan M. Morris, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Sean Michael Sabell, appeals his judgment of conviction entered on a jury verdict finding him guilty of sexual assault, unlawful sexual contact, third degree assault, and criminal mischief.  He also appeals his sentence under section 18-1.3-1004, C.R.S. 2017, of the Colorado Sex Offender Lifetime Supervision Act of 1998 (SOLSA).  We vacate the conviction for unlawful sexual contact and a $500 crime against a child surcharge, and we remand with directions to correct the mittimus.  In all other respects, we affirm the judgment and sentence.

## I.  Background

¶ 2    Sabell and his girlfriend, the victim, got into an argument on the night of December 14, 2013.  When the victim returned to the couple's home that evening after running errands, Sabell accused her of cheating on him and physically assaulted her.  After the fight, the victim began audio recording the altercation on her cell phone because she intended to play the recording later to Sabell to demonstrate to him his abusive behavior.  Sabell had smoked marijuana earlier in the day and was drinking alcohol throughout the evening, so the victim feared he would not remember his behavior that evening.  Sabell then forced the victim to perform oral

1

sex on him and later broke down her bedroom door after she had locked herself inside.

¶ 3 A few days later, Sabell called the police and alleged that the victim was attempting to poison him. During the investigation of Sabell's report, the victim played part of the December 14, 2013 audio recording for a police officer. Based on the content of the recording, the police arrested Sabell. He was eventually charged with one count of sexual assault, one count of unlawful sexual contact, one count of third degree assault, one count of criminal mischief, and one count of harassment. The People dismissed the harassment charge prior to trial. The jury convicted Sabell of all remaining charges, and he was sentenced to an indeterminate term of six years to life in prison on the sexual assault and unlawful sexual contact counts.[1]

¶ 4 On appeal, Sabell raises five arguments: (1) an improper jury instruction on intoxication requires reversal; (2) an improper limiting instruction regarding other acts evidence requires reversal;

---

[1] Sabell was also sentenced to six months in jail on the two misdemeanor convictions for third degree assault and criminal mischief. He does not appeal that aspect of his sentence.

2

(3) his sentence must be vacated because SOLSA is unconstitutional; (4) the sexual assault and unlawful sexual contact convictions must merge; and (5) a crime against a child surcharge imposed by the trial court at sentencing must be vacated. We agree with the fourth and fifth contentions and therefore vacate the unlawful sexual contact conviction and the $500 crime against a child surcharge, and remand for correction of the mittimus. We affirm in all other respects.

## II. Involuntary Intoxication Instruction

¶ 5    Sabell contends that the trial court erroneously instructed the jury on his affirmative defense of involuntary intoxication. He contends that this error requires reversal of the sexual assault, unlawful sexual contact, and criminal mischief convictions. We perceive no basis for reversal.

## A. Additional Facts

¶ 6    Before trial, the victim admitted that she had put Seroquel, a drug she had been prescribed, in Sabell's wine in an attempt to sedate him on the night of December 14, 2013. According to the victim, she put the drug in Sabell's drink after the sexual assault. However, Sabell testified at trial that the victim had put the

3

Seroquel in his drink before the recording began and that he had no memory of any of the recorded events.[2]

¶ 7     The defense raised the affirmative defense of involuntary intoxication.  During a jury instruction conference on the second day of trial, defense counsel stated that "there should be an addendum" to the standard presumption of innocence instruction to address the People's burden of proof on the affirmative defense.  The trial court invited defense counsel to prepare an alternative instruction.  The People then tendered a jury instruction on involuntary intoxication.  Defense counsel objected to the wording of the instruction, but did not assert that it impermissibly lessened the prosecution's burden of proof.

¶ 8     The next day, the trial court and both parties reviewed a packet of instructions submitted by the People.  The prosecutor stated that she had prepared the intoxication instruction according to the pattern jury instructions.  Specifically, the prosecutor explained that she had referred to COLJI-Crim. H:34 (2017)

---

[2] Both Sabell and the victim testified that the victim did not put Seroquel in Sabell's drink until after the physical assault.  Thus, the affirmative involuntary intoxication defense was not applicable to the third degree assault charge.

(voluntary intoxication) and COLJI-Crim. H:35 (2017) (involuntary intoxication) in drafting the instruction. The trial court asked if defense counsel objected to "the instructions that [the prosecutor] crafted," and defense counsel replied that he did not. Later, the trial court asked whether defense counsel renewed his objection to the standard burden of proof instruction, and defense counsel withdrew his previous objection.

¶ 9    In relevant part, the intoxication instruction given to the jury read:

> The evidence presented in this case has raised a question as to the voluntariness of the defendant's intoxication. In this case you must answer the question: Was the defendant's intoxication self-induced? (yes or no)
>
> . . . .
>
> If you answer "yes" to this question you may not consider evidence of self-induced intoxication for purposes of deciding whether the prosecution has proved the elements of the crimes charged in this case.
>
> If you answer "no" to this question and find the defendant's intoxication was not self-induced you should apply the following instruction:
>
> The evidence presented in this case has raised the affirmative defense of "involuntary

intoxication," as a defense to Sexual Assault, Criminal Mischief, and Unlawful Sexual Contact.

The defendant's conduct was legally authorized if:

1. he lacked the capacity to conform his conduct to the requirements of law, because of his intoxication, and

2. the intoxication was not self-induced.

The prosecution has the burden to prove, beyond a reasonable doubt, that the defendant's conduct was not legally authorized by this defense. In order to meet this burden of proof, the prosecution must disprove, beyond a reasonable doubt, at least one of the above numbered conditions.

¶ 10 Additionally, each of the relevant elemental instructions listed as an element that "the defendant's conduct was not legally authorized by the affirmative defense of Involuntary Intoxication." The elemental instructions also stated that the prosecution bore the burden of proving each element beyond a reasonable doubt. Finally, there was a standard instruction on the burden of proof, which read, "The burden of proof is upon the prosecution to prove to the satisfaction of the jury beyond a reasonable doubt the existence of all of the elements necessary to constitute the crime charged."

## B.  Standard of Review

¶ 11    A trial court has a duty to correctly instruct the jury on the governing law.  *People v. Pahl*, 169 P.3d 169, 183 (Colo. App. 2006). We review jury instructions de novo to determine whether they accurately informed the jury of the governing law, but we review questions of form and style for an abuse of discretion.  *Townsend v. People*, 252 P.3d 1108, 1111 (Colo. 2011).  Instructional error occurs when an instruction misleads or confuses the jury.  *Williams v. Chrysler Ins. Co.*, 928 P.2d 1375, 1377 (Colo. App. 1996); *see also Lybarger v. People*, 807 P.2d 570, 582-83 (Colo. 1991).

¶ 12    As a general matter, a failure to object to a jury instruction results in review for plain error.  *People v. Garcia*, 28 P.3d 340, 344 (Colo. 2001) ("If a defendant lodges no objection to a trial court's jury instruction, a plain error standard should be applied in reviewing the instruction.").  Plain errors are "obvious and substantial," *Hagos v. People*, 2012 CO 63, ¶ 14, 288 P.3d 116, 120, and "cast serious doubt on the reliability of the judgment of conviction," *id.* (quoting *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005)).

## C. Applicable Law

¶ 13    "In Colorado, involuntary intoxication is an affirmative defense to a criminal charge." *Miller*, 113 P.3d at 750.  Under that defense, "[a] person is not criminally responsible for his conduct if, by reason of intoxication that is not self-induced at the time he acts, he lacks capacity to conform his conduct to the requirements of the law." § 18-1-804(3), C.R.S. 2017.  "To submit the affirmative defense of involuntary intoxication to the jury, a defendant must offer proof which constitutes 'some credible evidence' of the condition." *People v. Garcia*, 113 P.3d 775, 783 (Colo. 2005).  Once a defendant meets that burden, the prosecution bears the burden of disproving the affirmative defense beyond a reasonable doubt.  *Id.* at 784 ("[A] properly raised affirmative defense is treated as though it were another element of th[e] offense.").

¶ 14    The Model Criminal Jury Instructions Committee's notes on the pattern voluntary intoxication instruction state:

> If there is question as to the voluntariness of the defendant's intoxication, draft an instruction explaining that: (1) the jurors are to decide, as a threshold matter, whether the defendant's intoxication was "self-induced" (as defined in Instruction F:330); and (2) depending on the outcome of that

> determination, they should then apply either this instruction, or Instruction H:35 (involuntary intoxication).

COLJI-Crim. H:34 cmt. 7; *see also* COLJI-Crim. H:35 cmt. 3 ("In cases where there is a factual dispute concerning whether the defendant's intoxication was self-induced, refer to Comment 7 of Instruction H:34 (intoxication (voluntary)).").

## D. Analysis

### 1. Waiver

¶ 15     At the outset, we note that the parties disagree on whether we should review this claim. Sabell admits that he did not object to the intoxication instruction in the trial court on the basis that it lessened the prosecution's burden of proof. However, he urges us to consider the issue on appeal. In contrast, the People urge us to conclude that Sabell waived this contention.

¶ 16     We recognize that the Colorado Supreme Court recently held that "mere acquiescence to a jury instruction does not constitute a waiver without some record evidence that the defendant intentionally relinquished a known right." *People v. Rediger*, 2018 CO 32, ¶ 3, ___ P.3d ___, ___; *see also People v. Smith*, 2018 CO 33, ___ P.3d ___. In *Rediger*, the court held that the defendant's

9

"purported acquiescence" in an erroneous instruction tendered by the People constituted, "at most," forfeiture. *Rediger*, ¶ 3, ___ P.3d at ___. As a result, the *Rediger* court reviewed for plain error. *Id.*

¶ 17    However, we need not discuss the applicability of *Rediger* and *Smith* here because we assume without deciding that Sabell did not waive this claim, and we will therefore review it on appeal. *Cf. People v. McMinn*, 2013 COA 94, ¶ 17, 412 P.3d 551, 557 (assuming without deciding that double jeopardy claim had been preserved).

### 2.  Intoxication Instruction

¶ 18    Sabell contends that the involuntary intoxication instruction impermissibly lessened the prosecution's burden of proof.  He argues that the first paragraph of the instruction allowed the jury to make a preliminary factual determination as to the voluntariness of his intoxication without requiring that the People disprove that element of the affirmative defense beyond a reasonable doubt.  We agree that the instruction was erroneous.

¶ 19    The first paragraph of the intoxication instruction directed the jury to answer the initial question — "Was the defendant's intoxication self-induced?" — without clarifying that the People bore the burden of disproving involuntary intoxication beyond a

reasonable doubt. The instruction did not mention the prosecution's burden of proof until after the initial paragraphs addressing the preliminary "yes or no" determination. Further, the instruction told the jury to apply the entirety of the instruction, including the portion correctly stating that the People bore the burden of disproving the affirmative defense, only if the jury answered the initial question in the negative.

¶ 20 Thus, the involuntary intoxication instruction in effect told the jury not to consider the People's burden of proof until after it first decided whether Sabell's intoxication was self-induced. The instruction therefore erroneously created the possibility that the affirmative defense of involuntary intoxication — and the prosecution's burden with respect thereto — would not be given due consideration by the jury.

### 3. Plain Error Review

¶ 21 In light of our conclusion that the instruction was erroneous, we turn to whether that error requires reversal. The parties disagree on the appropriate standard of review. Sabell urges us to consider this a structural error requiring automatic reversal. In

contrast, the People contend that plain error review is appropriate. We agree with the People and review for plain error.

¶ 22    Where, as here, the trial court erroneously instructs the jury in a manner that lessens the prosecution's burden of proof with respect to an affirmative defense, constitutional error has been committed. *See People v. Pickering*, 276 P.3d 553, 555 (Colo. 2011); *Garcia*, 113 P.3d at 784 ("[A] defendant's constitutional right to due process is violated by an improper lessening of the prosecution's burden of proof . . . ."). Indeed, the Colorado Supreme Court has rejected the argument that such instructional errors are structural in nature and has instead concluded that such errors are subject to constitutional harmless or plain error review. *Griego v. People*, 19 P.3d 1, 8 (Colo. 2001), *as modified on denial of reh'g* (Mar. 12, 2001) ("[A] jury instruction that is erroneous, either because the instruction omits or misdescribes an element of the offense, is not subject to structural error analysis."). Thus, we reject Sabell's argument that this error is structural. *See Hagos*, ¶ 10, 288 P.3d at 119 (listing as examples of structural error "complete deprivation of counsel, trial before a biased judge, unlawful exclusion of members of the defendant's race from a grand jury, denial of the

12

right to self-representation, and denial of the right to a public trial"); *see also Neder v. United States*, 527 U.S. 1, 8-12 (1999) (concluding that a jury instruction omitting an element is not structural error); *Miller*, 113 P.3d at 751 (reviewing erroneous jury instruction on voluntary intoxication for plain error).

¶ 23 We review instructional errors, "constitutional and nonconstitutional, that were not preserved by objection for plain error." *Hagos*, ¶ 14, 288 P.3d at 120.

¶ 24 We conclude that the instructional error here was not plain. First, we determine that the error was not obvious. "To qualify as 'plain' error, an error must be so clear-cut, so obvious, that a trial judge should be able to avoid it without benefit of objection." *People v. Pollard*, 2013 COA 31M, ¶ 39, 307 P.3d 1124, 1133.

¶ 25 Here, the trial court and prosecutor relied on the pattern jury instructions, and the committee's comments on their use, in an attempt to draft a proper intoxication instruction. Comment 7 on COLJI-Crim. H:34 states that, if there is a question as to the voluntariness of the defendant's intoxication, a separate instruction should be drafted "explaining that: (1) the jurors are to decide, as a threshold matter, whether the defendant's intoxication was 'self-

induced' . . . ; and (2) depending on the outcome of that determination, they should then apply either" the involuntary intoxication instruction or the voluntary intoxication instruction.[3] There was a question as to the voluntariness of Sabell's intoxication because he had smoked marijuana and drunk alcohol on December 14, 2013.  Accordingly, although the prosecutor did not draft a separate instruction on the issue, the preliminary paragraphs added to the intoxication instruction attempted to comply with comment 7 on COLJI-Crim. H:34.[4]  *Cf. People v. Laurson*, 15 P.3d 791, 796 (Colo. App. 2000) (noting that a jury instruction

---

[3] We disagree with Sabell's argument that comment 7 on COLJI-Crim. H:34 (2017) is implicated only when the jury is instructed on both voluntary and involuntary intoxication.  Rather, as the People assert, that comment becomes relevant when there is a factual question as to the voluntariness of the defendant's intoxication, regardless of whether the jury is instructed on a voluntary intoxication defense.

[4] We express no opinion as to whether COLJI-Crim. H:34, COLJI-Crim. H:35 (2017), and the accompanying comments on those pattern instructions are proper.  However, we note that comment 7 on COLJI-Crim. H:34 recommends the use of a separate instruction "explaining that . . . the jurors are to decide, as a threshold matter, whether the defendant's intoxication was 'self-induced.'"  That comment does not specify that such an instruction should also explain the People's burden of proof in the event that a defendant raises involuntary intoxication as an affirmative defense.  *See also* COLJI-Crim. H:35 cmt. 3.

"track[ing]" the pattern instruction and conforming to the language of relevant statutes is generally sufficient).

¶ 26    Further, we determine that the instructional error was not substantial.  Looking at the instructions as a whole, we note the jury was adequately informed of the prosecution's burden of proof as to the affirmative defense.  *See People v. Garcia*, 2012 COA 79, ¶ 51, 296 P.3d 285, 292 (considering as part of plain error review the jury instructions as a whole).  First, a presumption of innocence instruction explained that the prosecution had to prove beyond a reasonable doubt the existence of all the elements necessary to constitute the crimes charged.  Second, all the pertinent elemental instructions included, as the final element of each offense, that "the defendant's conduct was not legally authorized by the affirmative defense of Involuntary Intoxication in [the intoxication instruction]."  The elemental instructions also stated that the prosecution had to prove "each of the elements beyond a reasonable doubt."  *See Miller*, 113 P.3d at 750 ("[T]he court's failure to instruct the jury properly does not constitute plain error if the relevant instruction, read in conjunction with other instructions, adequately informs the jury of the law.").  Finally, the intoxication instruction itself included

language properly explaining the People's burden of disproving the two elements of the affirmative defense, albeit after the improper preliminary paragraphs.

¶ 27 Moreover, even if the jury would have found that Sabell was involuntarily intoxicated had it been properly instructed, we conclude there was no reasonable possibility that the jury would have found the other component of the involuntary intoxication defense — namely, that Sabell lacked the capacity to conform his conduct to the requirements of the law. The jury heard significant portions of the approximately three-hour audio recording in which Sabell was coherent and responsive to the victim. Aside from his testimony that he did not remember the events recorded by the victim, Sabell presented no evidence that the dose of Seroquel the victim put in his drink resulted in his inability to conform his conduct to law.

¶ 28 Thus, we cannot conclude that the error "so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction." *Hagos*, ¶ 14, 288 P.3d at 120 (quoting *Miller*, 113 P.3d at 750). In sum, although the

involuntary intoxication jury instruction here was erroneous, we perceive no basis for reversal.

## III. Other Acts Instruction

¶ 29     Sabell also contends that the trial court gave an erroneous instruction limiting the jury's consideration of other acts evidence. We perceive no error.

## A. Additional Facts

¶ 30     At trial, the victim testified about four other incidents in which Sabell had been violent toward her or had forced her to have sex. Other witnesses, including the victim's friend and police officers, also testified about these other acts.

¶ 31     Two of these incidents were described as the South Yank Court incidents because they occurred in Sabell and the victim's house on that street. The first incident took place in the kitchen, when Sabell "got in [the victim's] face and headbutted [her]" during an argument. The second South Yank Court incident took place in the victim's bedroom, when Sabell kicked a hole in her locked door around 3 a.m. because he wanted to have sex with her.

¶ 32     The victim also testified about a 2011 incident during which Sabell grabbed her arm, forced her to the floor, and threatened to

kill her while holding a knife.  Finally, the victim testified that, on Thanksgiving in 2013, Sabell forced her to have sex with him and attempted to force her to perform oral sex on him.

¶ 33     Before each witness testified about these incidents, the trial court gave an oral limiting instruction.  As to the first three incidents, the trial court instructed the jury that it could consider the evidence for the limited purpose of proving absence of mistake and intent.  With regard to the Thanksgiving incident, the trial court instructed the jury it could consider the evidence for the purpose of proving absence of mistake, intent, and motive.

¶ 34     During the instruction conference on the second day of trial, the trial court asked defense counsel if he objected to having the prosecutor draft a written limiting instruction that mirrored the oral instructions given during testimony.  Defense counsel stated that he had no objection.

¶ 35     The final limiting instruction read:

> The court admitted evidence of events at the South Yank Court address for the limited purpose of proving absence of mistake and intent only.  You may not consider it for any other reason.

The court admitted evidence of events in 2011 for the limited purpose of proving absence of mistake and intent only. You may not consider it for any other reason.

The court admitted evidence of events around Thanksgiving 2013 for the limited purpose of proving absence of mistake, intent and motive. You may not consider it for any other reason.

## B. Standard of Review

¶ 36    As noted, we review jury instructions de novo to determine whether they accurately informed the jury of the governing law, but we review questions of form and style for an abuse of discretion. *Townsend*, 252 P.3d at 1111.

## C. Applicable Law

¶ 37    CRE 404 governs the admission of evidence of "other crimes, wrongs, or acts." Such evidence "is not admissible to prove the character of a person in order to show that he acted in conformity therewith." CRE 404(b). However, evidence of other crimes is admissible "for other purposes, such as proof of motive, . . . intent, . . . or absence of mistake or accident." *Id.*

¶ 38    When evidence is admitted for a certain purpose, but is inadmissible for another purpose, the trial court "shall restrict the evidence to its proper scope and instruct the jury accordingly" if a

19

party so requests.  CRE 105.  In *People v. Garner*, the supreme court stated that when evidence of other acts is admitted under CRE 404(b), "the court should instruct the jury, pursuant to CRE 105, on the limited purpose for which such evidence is admitted at the time of admission," as well as at the close of the trial.  806 P.2d 366, 374 (Colo. 1991); *see also Yusem v. People*, 210 P.3d 458, 469 (Colo. 2009) ("[T]he trial court should take care to admit [other acts] evidence for specific purposes and to properly instruct the jury as to those purposes.").

¶ 39     In the context of sexual assault prosecutions, evidence of other sexual assaults by a defendant will often be admissible under CRE 404(b).  *See People v. Martinez*, 36 P.3d 154, 159-60 (Colo. App. 2001).  *See generally* § 16-10-301(1), C.R.S. 2017 (This legislative declaration states that, in a prosecution for sexual assault, "evidence of other sexual acts is typically relevant and highly probative.").  Similarly, in criminal prosecutions involving domestic violence, "evidence of similar transactions can be helpful and is necessary in some situations." § 18-6-801.5(1), C.R.S. 2017.

## D. Analysis

¶ 40    The People again urge us to conclude that Sabell waived this claim because defense counsel acquiesced in the prosecutor's tendered instruction.  Again, without discussing the applicability of the supreme court's recent decisions in *Rediger*, 2018 CO 32, ___ P.3d ___, and *Smith*, 2018 CO 33, ___ P.3d ___, we assume without deciding that Sabell did not waive this claim, and we therefore review it on the merits.  *Cf. McMinn*, ¶ 17, 412 P.3d at 557.

¶ 41    Sabell asserts that the limiting instruction was erroneous for two reasons.  First, he contends that the instruction did not prevent the jury from engaging in impermissible propensity inferences.  Second, he contends that the instruction allowed the jury to use the evidence improperly because it was not relevant to intent, motive, or absence of mistake.  We disagree with both arguments.

¶ 42    Contrary to Sabell's first contention, we conclude that the instruction properly informed the jury of the permissible use of the other acts evidence.  In fact, the instruction expressly stated that the jury could not consider the evidence for any purpose other than those specifically enumerated.  When a trial court admits other acts evidence for specific purposes, it "should . . . properly instruct the

21

jury as to those purposes." *Yusem*, 210 P.3d at 469. The trial court did so here. "We presume that the jury followed the court's instructions, absent evidence to the contrary." *Garcia*, ¶ 20, 296 P.3d at 289.

¶ 43 We similarly reject Sabell's contention that the instruction improperly directed the jury to consider the evidence for purposes of intent, absence of mistake, and — with regard to the Thanksgiving 2013 incident — motive. During a motions hearing on the other acts evidence, the trial court ruled that evidence of the four incidents was relevant because they all involved the victim in this case and "assaultive behavior while Sabell was allegedly intoxicated." We agree that, in the circumstances here, the evidence of prior incidents involving the victim were relevant to the purposes identified by the trial court. Sabell put his motive, intent, and the possibility of mistake at issue by raising the affirmative involuntary intoxication defense. As Sabell acknowledges, whether he acted knowingly and voluntarily was the primary issue at trial. The other acts evidence was relevant to that issue.

¶ 44 Thus, we reject Sabell's contention that the other acts instruction was inaccurate.

## IV. Constitutionality of SOLSA

¶ 45    Sabell was sentenced under SOLSA to six years to life in the custody of the Department of Corrections as a result of his sex offense convictions.  *See* § 18-1.3-1004(1)(a).  He contends that SOLSA is unconstitutional on its face and as applied to him.

¶ 46    The constitutionality of SOLSA is an issue of law we review de novo.  *See Hinojos-Mendoza v. People*, 169 P.3d 662, 668 (Colo. 2007).  Sabell did not challenge the constitutionality of his sentence under SOLSA in the trial court.  Nevertheless, we will exercise our discretion to review an unpreserved constitutional challenge for the first time on appeal.  *Id.* at 667-68.  We review unpreserved constitutional challenges for plain error.  *Hagos*, ¶ 14, 288 P.3d at 120.

¶ 47    Sabell argues that SOLSA violates his privilege against self-incrimination, procedural and substantive due process, the right to trial by a jury, the Equal Protection Clause, and the prohibition against cruel and unusual punishment.  As Sabell acknowledges, numerous divisions of this court have considered the constitutionality of SOLSA and have rejected all such challenges.  *See, e.g., People v. Collins*, 250 P.3d 668, 679 (Colo. App. 2010);

*People v. Firth,* 205 P.3d 445, 452 (Colo. App. 2008); *People v.*

*Lehmkuhl,* 117 P.3d 98, 108 (Colo. App. 2004); *People v. Dash,* 104

P.3d 286, 290 (Colo. App. 2004); *People v. Oglethorpe,* 87 P.3d 129,

133 (Colo. App. 2003); *People v. Strean,* 74 P.3d 387, 393 (Colo.

App. 2002). We are not persuaded to depart from these decisions,

and therefore we reject Sabell's contentions for the reasons stated

therein. Thus, we perceive no error, let alone plain error.

## V. Merger

¶ 48      Sabell contends, the People concede,[5] and we agree that

the unlawful sexual contact conviction should have merged with the

sexual assault conviction at sentencing.

¶ 49     The United States and Colorado Constitutions protect

individuals from multiple punishments for the same offense. *See*

U.S. Const. amends. V, XIV; Colo. Const. art. II, § 18; *see also*

*Woellhaf v. People,* 105 P.3d 209, 214 (Colo. 2005). A defendant

may not be convicted of two offenses for the same conduct if one

offense is included in the other. § 18-1-408(1)(a), C.R.S. 2017. The

supreme court recently concluded that "unlawful sexual contact is

---

[5] As the People note, we are not bound by their concessions. *See*
*People v. Corral,* 174 P.3d 837, 839 (Colo. App. 2007).

a lesser included offense of sexual assault, and when a defendant is convicted of both offenses based on the same conduct the conviction for unlawful sexual contact merges into the conviction for sexual assault." *Page v. People*, 2017 CO 88, ¶ 19, 402 P.3d 468, 472; *see also* § 18-3-402(1)(a), C.R.S. 2017; § 18-3-404(1)(a), C.R.S. 2017.

¶ 50     Here, the People concede that Sabell's sexual assault and unlawful sexual contact convictions were based on the same conduct.  Indeed, at the sentencing hearing the prosecutor and trial court both acknowledged that these convictions were based on the same set of facts.  Sabell did not raise the issue of merger, however, so we review for plain error.  *See Reyna-Abarca v. People*, 2017 CO 15, ¶¶ 45-46, 390 P.3d 816, 823 (holding that an unpreserved double jeopardy claim is reviewable for plain error).

¶ 51     We conclude that the trial court plainly erred in entering both the sexual assault and unlawful sexual contact convictions.  *See People v. Friend*, 2014 COA 123M, ¶ 74, ___ P.3d ___, ___ (*cert. granted in part* Feb. 8, 2016).  The protections against double jeopardy affect a substantial constitutional right.  *Id.* at ¶ 75, ___ P.3d at ___.  Further, we determine that the error was obvious.

25

Sabell points to several cases decided prior to his sentencing that recognized that unlawful sexual contact is a lesser included offense of sexual assault. *See, e.g., People v. Rogers*, 220 P.3d 931, 938 (Colo. App. 2008). Moreover, an analysis of the sexual assault and unlawful sexual contact statutes under the test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), would have led to the conclusion that unlawful sexual contact is a lesser included offense of sexual assault.

¶ 52　Thus, we merge the sexual assault and unlawful sexual contact convictions by vacating the latter conviction. *See Page*, ¶ 19, 402 P.3d at 472; *see also People v. Rhea*, 2014 COA 60, ¶¶ 16-17, 349 P.3d 280, 287-88 ("Merger has the same effect as vacating one of the multiplicitous sentences."). Because the prison terms imposed for these counts were ordered to run concurrently, merger will have no effect on the length of Sabell's sentence. However, we remand for the trial court to correct the mittimus.

## VI.　Crime Against a Child Surcharge

¶ 53　Sabell contends, the People concede, and we agree that the trial court erred in imposing a crime against a child surcharge of $500.

¶ 54    Under section 18-24-102(1), C.R.S. 2017, anyone convicted of a crime against a child is required to pay a surcharge to the court. *See also* § 18-24-102(2)(c) (requiring $500 surcharge if a person is convicted of a class 4 felony crime against a child).  Here, the sentencing minute order states that the trial court imposed a $500 crime against a child surcharge on the unlawful sexual contact conviction.  There was no discussion of this surcharge at the sentencing hearing.

¶ 55    The victim here was not a child.  The trial court therefore plainly erred in imposing the $500 crime against a child surcharge.  Thus, we vacate that surcharge and remand for correction of the mittimus to the extent that the $500 sum is included in the $3248.50 assessed on the mittimus.

## VII.  Conclusion

¶ 56    We vacate the unlawful sexual contact conviction and the crime against a child surcharge, and remand for the trial court to correct the mittimus accordingly.  In all other respects, the judgment and sentence are affirmed.

JUDGE BERNARD and JUDGE WELLING concur.