The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
August 27, 2020

## 2020COA128

**No. 17CA0972, *Peo v Houser* — Criminal Procedure — Postconviction Remedies — Conviction Obtained or Sentence Imposed in Violation of the Constitution; Attorneys and Clients — Ineffective Assistance of Counsel**

A division of the court of appeals considers whether a district court may deny without a hearing a defendant's Crim. P. 35(c) motion premised on trial counsel's alleged ineffectiveness for not presenting constitutional arguments that no appellate court in this state has ever adopted. The majority holds that a Crim. P. 35(c) motion fails to establish a meritorious claim of ineffective assistance of counsel if it rests on an attorney's failure to raise novel arguments unsupported by then-existing precedent.

The partial dissent would remand based on its determination that several of the defendant's constitutional claims that underlie his ineffective assistance of counsel claims have merit. The partial

dissent would hold that a defendant is entitled to a hearing on a Crim. P. 35(c) claim that presents serious constitutional questions regarding the validity of his conviction and sentence.

COLORADO COURT OF APPEALS     **2020COA128**

Court of Appeals No. 17CA0972
Douglas County District Court No. 06CR678
Honorable Paul A. King, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Timothy Charles Houser,

Defendant-Appellant.

ORDER AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE LIPINSKY
Fox, J., concurs
Berger, J., concurs in part and dissents in part

Prior Opinion Announced May 7, 2020, <u>WITHDRAWN</u>
Petition for Rehearing <u>GRANTED</u> in part, <u>DENIED</u> in part

Announced August 27, 2020

Philip J. Weiser, Attorney General, Jillian J. Price, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Lynn Noesner, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Timothy Charles Houser, appeals the district court's order denying his Crim. P. 35(c) motion for postconviction relief. The postconviction court rejected Houser's constitutional arguments and his claims of ineffective assistance of counsel without a hearing.

¶ 2    We affirm the postconviction court's denial of Houser's constitutional arguments. We also affirm the portion of the postconviction court's order addressing Houser's claim that his trial counsel was ineffective for failing to raise novel arguments. We hold that an attorney cannot be deemed ineffective solely because he or she did not take positions unsupported or not "clearly foreshadowed" by then-existing law. In addition, we affirm the portion of the order holding that Houser is not entitled to a hearing on his claim that his attorney was ineffective for failing to raise a valid defense, because that claim fails as a matter of law. However, we reverse the postconviction court's denial of Houser's claims that his counsel was ineffective for not challenging the out-of-court identification of Houser and the search warrant resting on such identification, and not challenging the prosecution's alleged outrageous conduct in forcing his first attorney to withdraw. The

1

case is remanded to the postconviction court for a hearing on those claims.

## I.     Background

¶ 3     Houser was convicted of patronizing a prostituted child in violation of section 18-7-406(1)(a), C.R.S. 2019.  Sixteen-year-old A.J. testified at Houser's trial that she earned money through prostitution.  She posted an advertisement on Craigslist in which she identified herself as a twenty-year-old "playmate."  Houser responded to A.J.'s posting.  A.J. told police she went to Houser's "home in Douglas County where he paid her $240 to engage in sexual acts with him."  *People v. Houser*, 2013 COA 11, ¶ 2, 337 P.3d 1238, 1243 (*Houser I*).

¶ 4     Houser was charged with patronizing a prostituted child. Houser filed a pretrial notice of intent to assert an affirmative defense under section 18-1-503.5, C.R.S. 2019, that Houser had reasonably believed A.J. was over the age of eighteen.  That statute authorizes a reasonable mistake of age defense, although it does not refer to the child prostitution statutes.  The prosecution filed an objection to the notice, arguing that section 18-7-407, C.R.S. 2019, which expressly applies to the child prostitution statutes, precluded

Houser from raising such a defense. *See* § 18-7-407 ("In any criminal prosecution under sections 18-7-402 to 18-7-407, it shall be no defense that the defendant did not know the child's age or that he reasonably believed the child to be eighteen years of age or older.").

¶ 5    Following a hearing, the trial court found that section 18-7-407 bars defendants charged with patronizing a prostituted child from presenting a reasonable mistake of age defense. The court, therefore, prohibited Houser from arguing at trial that he reasonably believed A.J. was at least eighteen years old.

¶ 6    A jury found Houser guilty of patronizing a prostituted child. The trial court sentenced him to thirty days in jail, with ten days' credit for time served, and sex offender intensive supervised probation for an indeterminate term of ten years to life. Six years later, after Houser failed to comply with the terms of his probation, the trial court resentenced him to two years to life in the custody of the Department of Corrections.

## A. Houser's Direct Appeal

¶ 7    Houser appealed his conviction. A division of this court affirmed. *Houser I*, ¶ 1, 337 P.3d at 1243. Two of the holdings in *Houser I* are relevant here.

¶ 8    First, the division affirmed the trial court's ruling that Houser was precluded from presenting a reasonable mistake of age defense. *Id.* at ¶ 27, 337 P.3d at 1246. In comparing sections 18-1-503.5(1) and 18-7-407, the *Houser I* division acknowledged that the former "mandates that the court allow a reasonable belief defense when the victim is at least fifteen years old, [while] the other expressly prohibits such a defense." *Id.* at ¶ 19, 337 P.3d at 1245. After meticulously analyzing the legislative history of the two statutes, the division determined that section 18-7-407 applies to the offense of patronizing a prostituted child. Thus, defendants charged with that offense cannot present a reasonable mistake of age defense, as a matter of law. *Id.* at ¶¶ 18-27, 337 P.3d at 1245-46.

¶ 9    Second, the division declined to consider Houser's unpreserved argument that section 18-7-401(6), C.R.S. 2019, which defines "prostitution by a child," is unconstitutionally vague on its face. *Id.* at ¶ 49, 337 P.3d at 1250. The division decided that

judicial economy did not "afford a basis" for departing from the principle that a constitutional challenge may not be raised for the first time on appeal. *Id.* at ¶¶ 28, 30, 49, 337 P.3d at 1246, 1247, 1250.

B.    Houser's Crim. P. 35(c) Motion

¶ 10    After the *Houser I* division affirmed his conviction, Houser filed a Crim. P. 35(c) motion challenging the constitutionality of his conviction and sentence, and alleging ineffective assistance of counsel. The postconviction court denied Houser's motion without a hearing. It found that *Houser I* precluded Houser's constitutional arguments and, even if Houser could present such arguments, they fail on the merits. It also held that Houser failed to establish prejudice and deficient performance and, therefore, is not entitled to a hearing on his ineffective assistance of counsel claims. This appeal followed.

¶ 11    In his appeal, Houser largely reasserts the arguments he presented in his Crim. P. 35(c) motion.

¶ 12    Houser raises four constitutional arguments: (1) the offense of patronizing a prostituted child is unconstitutionally vague; (2) section 18-7-401(6) violates Houser's right to equal protection; (3)

5

section 18-7-407, which *Houser I* held precludes a defendant from raising an affirmative defense of reasonable mistake of age in child prostitution cases, violates Houser's equal protection and due process rights; and (4) section 18-1.3-1004(2)(a), C.R.S. 2019, the Colorado Sex Offender Lifetime Supervision Act of 1998 (SOLSA), is unconstitutional as applied to Houser and, specifically, violates his due process rights.

¶ 13    Further, Houser contends that his trial counsel was ineffective in failing to (1) challenge the constitutionality of section 18-7-407; (2) challenge the constitutionality of his sentence under SOLSA; (3) argue that the offense of patronizing a prostituted child is void for vagueness; (4) argue that Houser's conviction under section 18-7-406(1) violates equal protection; (5) raise a valid defense; (6) call a particular witness; and (7) challenge "the State's outrageous conduct." Houser argues that the postconviction court erred in denying him a hearing on the claims raised in his Crim. P. 35(c) motion.

## II. Houser's Constitutional Claims

¶ 14    Before we address the merits of Houser's constitutional arguments, we first consider the People's contention that they are

not properly before us.  The People assert that, because Houser raised only one constitutional argument in his direct appeal, we are precluded from considering all of Houser's constitutional claims under Crim. P. 35(c)(3)(VI) or Crim. P. 35(c)(3)(VII) or, in the alternative, under the doctrine of law of the case.  We disagree that Houser's void for vagueness argument is not properly before us.  However, we agree with the People that we are precluded from considering Houser's other constitutional arguments under Crim. P. 35(c).

A.    Although Houser's Void for Vagueness Argument Is Properly Before Us, We Do Not Consider Houser's Other Constitutional Arguments Under Crim. P. 35(c)

1.    Crim. P. 35(c)(3)(VI) and Crim. P. 35(c)(3)(VII)

¶ 15    Crim. P. 35(c)(3)(VI) requires us to "deny any claim that was raised and resolved in a prior appeal . . . ."  We must also "deny any claim that could have been presented in an appeal previously brought or postconviction proceeding previously brought . . . ."  Crim. P. 35(c)(3)(VII); *see Dunlap v. People*, 173 P.3d 1054, 1062 n.4 (Colo. 2007).

¶ 16    As discussed above, Houser contended in his direct appeal that the offense of patronizing a prostituted child is

7

unconstitutionally vague, although the division in *Houser I* declined to consider the argument. *Houser I*, ¶¶ 28, 49, 337 P.3d at 1246, 1250. Houser's void for vagueness argument, therefore, does not fit within Crim. P. 35(c)(3)(VI) or Crim. P. 35(c)(3)(VII) because it was raised, but not resolved, in Houser's direct appeal. We therefore address this argument on the merits. We do not, however, consider Houser's remaining constitutional arguments because Houser could have raised them in his direct appeal but did not do so. *See* Crim. P. 35(c)(3)(VII).

## 2. Law of the Case

¶ 17 "[T]he law of the case 'is a rule of practice, based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter.'" *Verzuh v. Rouse*, 660 P.2d 1301, 1303 (Colo. App. 1982) (quoting *United States v. U.S. Smelting Ref. & Mining Co.*, 339 U.S. 186, 198 (1950)). Houser argues that the law of the case doctrine does not apply to his argument that section 18-7-406 is void for vagueness because the division in *Houser I* "refused to address or resolve" the merits of that argument. We agree. Because Houser's void for vagueness argument was not

8

"litigated and decided" in *Houser I*, the law of the case doctrine does not preclude us from addressing it.

## B. The Offense of Patronizing a Prostituted Child Is Not Unconstitutionally Vague

¶ 18  We disagree with Houser's argument that the patronizing a prostituted child statute is unconstitutionally vague.

¶ 19  We review the constitutionality of a statute de novo. *Dean v. People*, 2016 CO 14, ¶ 8, 366 P.3d 593, 596. A statute is not void for vagueness so long as it "permits persons of ordinary intelligence to distinguish between permissible and illegal conduct and provides workable standards for those responsible for the enforcement and application of the law." *People v. West*, 724 P.2d 623, 626 (Colo. 1986).

¶ 20  A person commits the crime of "patronizing a prostituted child" by performing with a child one of the acts included in the definition of "prostitution by a child." § 18-7-401(6); § 18-7-406(1). "[P]rostitution by a child" is defined as

> either a child performing or offering or agreeing
> to perform any act of sexual intercourse,
> fellatio, cunnilingus, masturbation, or anal
> intercourse with any person not the child's
> spouse in exchange for money or other thing of
> value or any person performing or offering or

9

> agreeing to perform any act of sexual intercourse, fellatio, cunnilingus, masturbation, or anal intercourse with any child not the person's spouse in exchange for money or other thing of value.

§ 18-7-401(6).

¶ 21 Houser argues that, because the definition of "prostitution by a child" includes certain actions performed by a child, but not by the defendant, it is unclear how a "defendant can conform his behavior to avoid criminal liability." *See* § 18-7-401(6). For example, he contends that a defendant could be found guilty of patronizing a prostituted child merely because a child offered to perform for the defendant one of the acts specified in section 18-7-401(6). Houser suggests that merely reading a child's written offer of prostitution, such as in a Craigslist posting, would be sufficient to convict a defendant of patronizing a prostituted child.

¶ 22 But Houser's reading of the statute is too broad. Houser was not convicted of "prostitution by a child," but of "patronizing a prostituted child" under section 18-7-406(1)(a). Section 18-7-406(1)(a) requires that *the defendant* perform one of the prohibited acts with a child. The plain language of the statute

10

makes clear that the actions of a child alone do not constitute an offense under section 18-7-406(1)(a).

¶ 23    While we acknowledge that the language of section 18-7-406(1)(a) could be clearer, a statute "need not be drafted with mathematical precision" to provide "fair warning of the proscribed conduct." *People v. Becker*, 759 P.2d 26, 31 (Colo. 1988). Thus, we conclude that section 18-7-406(1) is not void for vagueness.

¶ 24    Houser also tacks on a cursory as-applied challenge at the conclusion of his vagueness argument, suggesting that the use of the word "offer[]" in section 18-7-401(6) "destroyed [his] defense" because "the [prosecution] was able to argue Houser was guilty regardless of whether [he had] sex" with A.J. We do not address this argument because Houser presented it as a bald legal proposition. *Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo. App. 2010) ("We will not consider a bald legal proposition presented without argument or development."). Further, we do not consider Houser's as-applied challenge because he did not present such argument in his original Crim. P. 35(c) motion. *See People v. Salinas*, 55 P.3d 268, 270 (Colo. App. 2002).

11

¶ 25    For these reasons, we conclude that Houser is not entitled to a hearing on his void for vagueness claim based on the record and the plain language of the statute.  Thus, we affirm the postconviction court's summary denial of this claim.

### III.    Houser's Ineffective Assistance of Counsel Claims

¶ 26    We next address whether Houser is entitled to a hearing on his ineffective assistance of counsel claims.  *See* Crim. P. 35(c)(3)(VIII) (requiring that we "shall not deny a postconviction claim of ineffective assistance of trial counsel on the ground that all or part of the claim could have been raised on direct appeal").  We conclude that Houser is entitled to a hearing on the merits of some, but not all, of his ineffective assistance of counsel claims.

### A.    Applicable Law

### 1.    Ineffective Assistance of Counsel Claims

¶ 27    A criminal defendant is constitutionally entitled to the effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Davis v. People*, 871 P.2d 769, 772 (Colo. 1994).  "The purpose of this constitutional guarantee is to ensure the accused a level of assistance calculated to produce a fair and just result in a

criminal prosecution." *People v. Garcia*, 815 P.2d 937, 940 (Colo. 1991).

¶ 28     A defendant's conviction may be reversed based on a claim of ineffectiveness of counsel, but only if the defendant satisfies both prongs of the test the United States Supreme Court adopted in *Strickland*. *Davis*, 871 P.2d at 772. Under *Strickland*, a defendant must demonstrate that (1) counsel's performance was outside the wide range of professionally competent assistance and (2) the defendant was prejudiced by counsel's substandard legal work. *Strickland*, 466 U.S. at 687.

¶ 29     Prevailing on the first prong is complicated by the "wide range of professionally competent assistance" counsel can provide. *Id.* at 690. "Because of the difficulties inherent in making the evaluation," we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

¶ 30     Under the second prong of *Strickland*, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Rather, the "defendant must show that

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" to demonstrate prejudice. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *see Hagos v. People*, 2012 CO 63, ¶ 30, 288 P.3d 116, 123 (holding that the standard of proof to demonstrate prejudice is that of a reasonable probability).

¶ 31 "It is the defendant's burden to prove both *Strickland* prongs." *People v. Corson*, 2016 CO 33, ¶ 34, 379 P.3d 288, 295; *see Holland v. Jackson*, 542 U.S. 649, 654 (2004) (holding that the defendant has the burden of proving whether counsel's performance was deficient by a preponderance of the evidence); *see also Hagos*, ¶ 30, 288 P.3d at 123.

¶ 32 The Colorado cases interpreting *Strickland* have not consistently articulated the defendant's burden of proof to establish prejudice resulting from counsel's allegedly substandard legal work. As then-Judge Gabriel explained, "[o]ur supreme court has issued arguably conflicting pronouncements as to the proper burden of proof for *Strickland*'s second prong." *People v. Washington*, 2014 COA 41, ¶ 23, 345 P.3d 950, 955; *compare Hagos*, ¶ 16, 288 P.3d at

14

120 (applying a reasonable probability standard), *and Garcia*, 815 P.2d at 941 (same), *with People v. Naranjo*, 840 P.2d 319, 325 (Colo. 1992) (holding that the burden to prove prejudice is "by a preponderance of the evidence"). While some divisions of this court have followed *Naranjo*, *see, e.g.*, *People v. Garner*, 2015 COA 174, ¶ 17, 381 P.3d 320, 324; *People v. McDowell*, 219 P.3d 332, 339 (Colo. App. 2009), we agree with the division in *Washington* that "reasonable probability" is the appropriate standard of proof under *Strickland*'s second prong. ¶ 23, 345 P.3d at 954-55.

### 2. Counsel's Performance Is Not Rendered Deficient for Failing to Present Novel Legal Arguments

¶ 33     "[N]umerous state and federal courts have concluded that counsel's failure to advance novel legal theories or arguments does not constitute ineffective performance." *Ledbetter v. Comm'r of Corr.*, 880 A.2d 160, 167 (Conn. 2005). Specifically, a lawyer does not perform deficiently by "failing to raise novel arguments that are unsupported by then-existing precedent." *United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019); *see Snider v. United States*, 908 F.3d 183, 192 (6th Cir. 2018) ("We have repeatedly held that counsel is not ineffective for failing to predict developments in the

15

law, unless they were clearly foreshadowed by existing decisions."); *see also Shaw v. Wilson*, 721 F.3d 908, 916-17 (7th Cir. 2013). "Nor does counsel fall below *Strickland*'s standard of reasonableness by failing to anticipate changes in the law, or to argue for an extension of precedent." *Morris*, 917 F.3d at 823. Even if a "wholly novel claim" may have had merit in hindsight, counsel's failure to raise such a claim does not render his performance constitutionally ineffective. *Anderson v. United States*, 393 F.3d 749, 754 (8th Cir. 2005).

¶ 34 This does not mean that an attorney cannot be ineffective because he or she did not present an argument lacking decisive precedent. "Even where the law is unsettled, . . . counsel must raise a material objection or argument if 'there is relevant authority strongly suggesting' that it is warranted." *Morris*, 917 F.3d at 824 (quoting *United States v. Carthorne*, 878 F.3d 458, 466 (4th Cir. 2017)).

¶ 35 Further, an attorney's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. This is for good reason. "There are countless ways to provide effective

16

assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way." *Id.* at 689.

¶ 36    *Strickland* cautioned that "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.*  The Court noted that "[i]ntensive scrutiny of counsel . . . could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client." *Id.* at 690.  Thus, "[c]ourts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result." *Id.* at 697.

¶ 37    For this reason, an attorney may perform effectively by choosing "to maneuver within the existing law, declining to present untested or rejected legal theories." *State v. McNeill*, 700 N.E.2d 596, 607 (Ohio 1998); *see Bailey v. State*, 472 N.E.2d 1260, 1265 (Ind. 1985) (holding that counsel is not ineffective if he or she fails

17

to "change then-existing law"); *see also Engle v. Isaac*, 456 U.S. 107, 134 (1982) ("[T]he Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim.").

¶ 38    The partial dissent asserts that we are making new bright line rule. But there is nothing novel about our holding. Our approach reflects the well-established principle that, to prevail on a claim of ineffective assistance of counsel, a defendant must show that his or her counsel's legal work fell outside the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Indeed, no reported Colorado decision has held that an attorney was ineffective because he or she did not attempt to break new legal ground, and the partial dissent cites to no Colorado authority in support of its expansive view of ineffectiveness.

¶ 39    The partial dissent asserts that

> [i]f any of Houser's constitutional claims that underlie his ineffective assistance of counsel claims have merit, he should be given an opportunity to convince a district court judge, based on evidence, including expert testimony, that the failure to raise those meritorious

18

> claims constituted deficient performance under
> the first prong of *Strickland.*

*Infra* ¶ 93. But under this reasoning, a defendant would be entitled to a hearing on any Crim. P. 35(c) claim for ineffective assistance merely by arguing that counsel failed to raise a constitutional argument with any potential merit. This would be true even where the claim rests on arguments that would have been *directly contrary* to the law at the time of trial and where counsel raised a reasonable alternative argument.

¶ 40     The partial dissent's interpretation of ineffectiveness would also have significant repercussions for every attorney in this state, as it would lower the bar for proving professional negligence. *See Rantz v. Kaufman,* 109 P.3d 132, 139 (Colo. 2005) (explaining that the "inquiry undertaken" in cases involving ineffective assistance and cases involving legal malpractice "is identical and focuses on what ordinary members of the legal profession would have done at the time the action was taken"). If a criminal defense attorney can be deemed ineffective for not urging a court to adopt a new constitutional rule, then an attorney could be found professionally negligent for making the same judgment call. Finding that an

attorney commits malpractice by not seeking this type of change in the law would flood the courts with new professional negligence lawsuits, as well as novel claims filed by attorneys practicing defensive lawyering.

### 3.    Denials of Crim. P. 35(c) Motions Without a Hearing

¶ 41    A defendant is entitled to a hearing on the merits of a Crim. P. 35 motion if he or she "assert[ed] facts that if true would provide a basis for relief." *White v. Denver Dist. Court,* 766 P.2d 632, 635 (Colo. 1988).  A court, therefore, may only deny a Crim. P. 35(c) motion without a hearing when "the motion and the files and record of the case show to the satisfaction of the court that the defendant is not entitled to relief." Crim. P. 35(c)(3)(IV); *see People v. Thomas,* 867 P.2d 880, 890-91 (Colo. 1994).  "Summary denial of a postconviction relief motion is also appropriate if the claims raise only an issue of law, or if the allegations, even if true, do not provide a basis for relief." *People v. Venzor,* 121 P.3d 260, 262 (Colo. App. 2005).

¶ 42    Thus, "[t]he denial of a claim of ineffective assistance of counsel without a hearing is justified if, but only if, the existing record establishes that the defendant's allegations, even if proven

20

true, would fail to establish either constitutionally deficient performance or prejudice." *People v. Chavez-Torres*, 2016 COA 169M, ¶ 31, 410 P.3d 690, 696, *aff'd*, 2019 CO 59, 442 P.3d 843; *see People v. Rodriguez*, 914 P.2d 230, 255 (Colo. 1996).

¶ 43    "We review de novo a postconviction court's denial of a Crim. P. 35(c) motion without a hearing." *People v. McGlaughlin*, 2018 COA 114, ¶ 25, 428 P.3d 691, 697.

### B.    The Failure to Raise Certain Novel Legal Arguments Did Not Render Houser's Counsel Ineffective

¶ 44    Houser contends that his counsel was ineffective by failing to raise four arguments that were not established by precedent at the time: the unconstitutionality of section 18-7-407, the unconstitutionality of Houser's sentence under SOLSA, section 18-7-406(1) is void for vagueness, and section 18-7-406(1) violates equal protection.

¶ 45    We disagree and affirm the postconviction court's denial of these claims without a hearing because, as a matter of law, Houser's counsel was not ineffective for failing to raise novel arguments.

21

### 1. Failure to Challenge the Constitutionality of Section 18-7-407

¶ 46 Houser argues that his counsel was ineffective because he failed to challenge the constitutionality of section 18-7-407, which precludes a defendant from raising a mistake of age defense in cases involving offenses under the child prostitution statutes. We disagree.

¶ 47 Houser does not cite, and, with one exception, we cannot find, any reported case involving a challenge to the constitutionality of section 18-7-407. *See People v. Maloy*, 2020 COA 71, ¶ 44, ___ P.3d ___, ___ (rejecting challenge to the constitutionality of section 18-7-407).

¶ 48 Significantly, at the time of Houser's trial, no Colorado case had yet clarified whether section 18-7-407 or section 18-1-503.5(1), the more general statute allowing for a reasonable mistake of age defense, applied to the offense of patronizing a prostituted child. The issue was not resolved until Houser's direct appeal. *See Houser I*, ¶ 14, 337 P.3d at 1244 (concluding, "*in a matter of first impression*, that section 18-7-407 prevents a defendant from offering a reasonable belief in age defense to a charge of patronizing a prostituted child") (emphasis added); *see also Maloy*, ¶ 40, ___

P.3d at ___ (citing to *Houser I* for the proposition that, under sections 18-1-503.5(1) and 18-7-407, the affirmative defense of reasonable mistake of age is not available to a defendant charged with patronizing a prostituted child).

¶ 49   At the pretrial hearing on this issue, Houser's counsel argued that section 18-1-503.5(1) applied to the offense of patronizing a prostituted child and that Houser should therefore be allowed to argue at trial that he reasonably believed A.J. was an adult.  In support of this argument, counsel cited to the legislative history of each statute and presented a number of other arguments supporting his position.  Houser's attorney did not challenge the constitutionality of section 18-7-407, however.  The prosecution countered that section 18-7-407 applied based on rules of statutory construction because it was more specific than section 18-1-503.5(1).

¶ 50   The postconviction court, which had also presided over the hearing, said that, although it had ultimately concluded that section 18-7-407 was "better law," the argument of Houser's counsel had been "skillful and rational."

¶ 51    Houser urges us to conclude that counsel's failure to challenge the constitutionality of section 18-7-407 rendered his performance ineffective. Regardless of the persuasiveness of Houser's constitutional arguments, the issue before us is whether counsel's choice of argument rendered his performance deficient. *Anderson,* 393 F.3d at 754 (explaining that the question is not whether counsel's decision to choose an argument was "intelligent or effective," but whether the decision was an unreasonable one that only an incompetent attorney would make); *see also Strickland,* 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . .").

¶ 52    We hold that, regardless of the facts Houser could present at a Crim. P. 35(c) hearing, he could not prove that his counsel's performance was deficient on the grounds that the attorney did not mount a novel constitutional challenge to section 18-7-407 when counsel put forth a "skillful and rational" argument that the statute did not apply.

¶ 53    In sum, Houser's counsel was not ineffective for not challenging the constitutionality of section 18-7-407 and instead

24

making the reasonable strategic choice to argue that the statute did not apply to Houser. If successful, the argument would have allowed Houser to raise the defense of reasonable mistake of age.

¶ 54 For these reasons, we affirm the postconviction court's decision to deny Houser a hearing on his claim that his counsel was ineffective for failing to challenge the constitutionality of section 18-7-407.

2. Failure to Challenge the Constitutionality of Houser's Sentence Under SOLSA

¶ 55 Houser contends that his counsel's failure to challenge the constitutionality of SOLSA as applied to Houser rendered counsel's performance deficient. We disagree.

¶ 56 As Houser acknowledges, divisions of this court — including the divisions that decided the issue before his trial — have rejected every facial challenge to the constitutionality of SOLSA. *See, e.g.*, *People v. Knobee*, 2020 COA 7, ¶ 63, ___ P.3d ___, ___; *People v. Sabell*, 2018 COA 85, ¶ 47, 452 P.3d 91, 100; *People v. Relaford*, 2016 COA 99, ¶ 72, 409 P.3d 490, 501; *People v. Torrez*, 2013 COA 37, ¶ 88, 316 P.3d 25, 40; *People v. Collins*, 250 P.3d 668, 679 (Colo. App. 2010); *People v. Villa*, 240 P.3d 343, 359 (Colo. App.

25

2009); *People v. Firth*, 205 P.3d 445, 452 (Colo. App. 2008). Until April 2020, divisions of this court had also rejected *every* as-applied challenge to the constitutionality of the statute. *See Maloy*, ¶ 35, ___ P.3d at ___ (ruling in favor of the defendant's as-applied equal protection challenge to a section of SOLSA for the first time in a reported case); *see also Sabell*, ¶ 45, 452 P.3d at 100 (rejecting an as-applied constitutional challenge to SOLSA because the division was not persuaded to depart from the numerous decisions of previous divisions of this court affirming the constitutionality of SOLSA); *People v. Oglethorpe*, 87 P.3d 129, 133 (Colo. App. 2003) (holding that SOLSA was not unconstitutional as applied to the defendant); *cf. People in Interest of T.B.*, 2019 COA 89, ¶ 1, ___ P.3d ___, ___ (holding that the automatic lifetime registration requirement contained in the Colorado Sex Offender Registration Act is unconstitutional as applied to juveniles) (*cert. granted* Feb. 3, 2020).

¶ 57    Rather than raise an argument unsupported by Colorado precedent, Houser's counsel asserted that Houser was not subject to SOLSA because he reasonably believed A.J. was an adult, asked the court to consider that A.J. had misled Houser about her age,

26

noted that the legislature did not intend that SOLSA punish someone like Houser who reasonably believed he was patronizing an adult prostitute, and argued that the sex offender treatment required under SOLSA was unnecessary based on Houser's psychological evaluations.

¶ 58 Because the Colorado appellate courts had universally rejected constitutional challenges to SOLSA at the time of Houser's trial, he cannot establish he was prejudiced by counsel's failure to raise such a challenge. The record therefore establishes that Houser cannot make a successful ineffective assistance of counsel claim based on his counsel's failure to attack the constitutionality of SOLSA. *See Chavez-Torres*, ¶ 31, 410 P.3d at 696.

¶ 59 We therefore affirm the postconviction court's denial of Houser's request for a hearing on his claim that his counsel was ineffective for failing to challenge the constitutionality of SOLSA.

### 3. Failing to Argue that Section 18-7-406(1) Is Void for Vagueness

¶ 60 Houser contends that his counsel was ineffective for failing to argue that the offense of patronizing a prostituted child is void for vagueness. We disagree.

¶ 61 As discussed in Part II.B above, we conclude, as a matter of first impression, that the offense of patronizing a prostituted child under section 18-7-406(1) is not unconstitutionally vague. Houser's counsel, therefore, did not perform deficiently by failing to raise this novel argument. *See Morris*, 917 F.3d at 823. Moreover, because we conclude that section 18-7-406(1) is not unconstitutionally vague, Houser cannot demonstrate a reasonable probability that, but for his counsel's failure to argue vagueness, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

¶ 62 Thus, we affirm the postconviction court's denial of Houser's request for a hearing on his claim that his counsel was ineffective for failing to attack section 18-7-406(1) as unconstitutionally vague.

4. Failure to Argue that Houser's Conviction Under Section 18-7-406(1) Violates Equal Protection

¶ 63 Houser argues that his counsel was ineffective because he did not present an equal protection argument. Houser asserts that he was denied equal protection because, even though his conduct fell within the meaning of "soliciting for child prostitution" under section 18-7-402, C.R.S. 2019, he was charged under section

18-7-406(1) for patronizing a prostituted child, which carries a harsher penalty. Houser alleges that his counsel "recognized the offer and agreement language in the 'prostitution by a child' definition was problematic. Yet, his counsel didn't try to litigate the constitutionality of this language." But the issue is not whether such an equal protection argument could have merit. It is whether counsel could be found ineffective for choosing not to present the argument. We disagree with Houser that his counsel's decision rendered him ineffective.

¶ 64 The partial dissent asserts that Houser is nonetheless entitled to a hearing on his claim that his counsel was ineffective for not launching a constitutional attack on section 18-7-406(1), even though no such attack had succeeded in any reported decision at the time of Houser's trial. The partial dissent relies on the division's determination in *Maloy* that the defendant was denied equal protection because, as applied to the defendant's conduct, patronizing a prostituted child proscribed the same conduct as pandering of a child and inducement of child prostitution, even though the latter offenses carry lighter sentences than the former offense. *Id.* (The division in *Maloy* also concluded that, based on

29

the facts of the case, solicitation does not proscribe the same conduct as patronizing a prostituted child.)

¶ 65　　Had *Maloy* predated Houser's trial and Houser's counsel nevertheless failed to raise an as-applied equal protection challenge to 18-7-406(1)(a), Houser's ineffective assistance claim may well have warranted a hearing to determine whether *Maloy* sufficiently foreshadowed a change in the law that would have impacted the outcome of Houser's case.  But the division did not decide *Maloy* until more than ten years after Houser's trial.

¶ 66　　A defense attorney is not ineffective because he or she did not raise an untested constitutional challenge to a criminal charge that is not clearly foreshadowed by then-existing case law.  *See Anderson*, 393 F.3d at 754; *see also Snider*, 908 F.3d at 192.

¶ 67　　Houser does not point us to any foreshadowing in Colorado case law that would have required his counsel to argue that section 18-7-406(1) violates equal protection.  Instead, Houser merely cites to cases holding that unrelated statutes violate equal protection.  For example, Houser relies on *People v. Marcy*, 628 P.2d 69, 71-72 (Colo. 1981), in which the Colorado Supreme Court held that two murder statutes were "not sufficiently distinguishable . . . to

30

warrant the substantial differential in penalty authorized by the statutory scheme." Houser therefore is not entitled to relief for ineffective assistance of counsel because his counsel did not present a novel equal protection argument not "clearly foreshadowed" under existing law. *See Venzor*, 121 P.3d at 262.

¶ 68 Thus, we affirm the postconviction court's denial without a hearing of Houser's ineffective assistance claim based on his counsel's failure to present an equal protection argument.

### C. Houser Is Not Entitled to a Hearing on His Claim that His Counsel Failed to Raise a Valid Defense

¶ 69 Houser further contends that he is entitled to a hearing on his claim that his counsel was ineffective by offering a theory of defense that admitted Houser's guilt without his consent. Houser argues that this tactic demonstrated that his counsel was ignorant of sections 18-7-406(1)(a) and 18-7-401(6). We disagree and conclude that his counsel's theory of defense did not, as a matter of law, admit Houser's guilt. *See Venzor*, 121 P.3d at 262 ("Summary denial of a postconviction relief motion is . . . appropriate if the claims raise only an issue of law . . . .").

31

¶ 70    Houser's counsel argued that, although Houser arranged for A.J. to visit his home, they did not have sex because A.J. refused to produce an ID after Houser demanded that she prove she was at least eighteen. According to this theory, Houser was prepared to pay A.J. for sex, but only if she first convinced him that she was at least eighteen. Defense counsel admitted that Houser agreed to "pay [A.J.] for her time," but argued Houser did not pay her for sex. Instead, Houser's counsel asserted that Houser paid A.J. because he knew "her pimp [was] in the car" and he feared for his safety if she walked out his door without cash in hand.

¶ 71    At the time of Houser's trial, few Colorado appellate decisions addressed the offense of patronizing a prostituted child. *See People v. Madden*, 111 P.3d 452, 457 (Colo. 2005); *People v. Holland*, 708 P.2d 119, 119 n.2 (Colo. 1985). And only one of the cases — *Madden* — analyzed section 18-7-406(1)(a). *See Madden*, 111 P.3d at 457.

¶ 72    In *Madden*, the court reversed a defendant's conviction for attempted patronizing of a prostituted child because "there was no evidence presented at trial that [the defendant] attempted to give anything of value to [the child] or to any other person in exchange

32

for sex [with the child]." *Id.* at 460. The court held that "'patronizing a prostituted child' requires an exchange of something of value" for "sex with a child." *Id.* at 459.

¶ 73    While a division of this court later concluded in *Houser I* that a "person need not perform a sexual act to be guilty of patronizing a prostituted child," the case law at the time of Houser's trial permitted an argument that a defendant could not be found liable for patronizing a prostituted child if he did not perform one of the prohibited acts with her. *Houser I*, ¶ 69, 337 P.3d at 1253. Counsel's defense, although unpersuasive to the jury, did not amount to a guilty plea under *Madden*.

¶ 74    Thus, we deny Houser's claim that he is entitled to a hearing on his claim that his counsel was ineffective for not raising a valid defense. *See* Crim. P. 35(c)(3)(IV); *see also Thomas*, 867 P.2d at 890-91.

D.    Houser Is Entitled to a Hearing on the Merits of His Remaining Claims

1.    Failure to Challenge Out-of-Court Identification

¶ 75    Houser argues that he is entitled to a hearing on his claim that his trial counsel was ineffective for failing to sufficiently

challenge A.J.'s out-of-court identification of him and to file a motion to suppress the search warrant for his home premised on that identification. We agree.

¶ 76 Houser alleges that, instead of conducting a photo lineup, Mike Ryan, a Denver Police Department detective, drove with A.J. to Houser's residence, improperly showed her only a single photo, and asked, "[I]s this the guy?" The affidavit filed in support of the warrant used to search Houser's home bolsters Houser's challenge to the photo identification and search of his home. It states that Ryan "obtained a photo of [Houser], which he showed to [A.J.]." But it can also be interpreted to support the prosecution's assertion that Ryan later told another officer, months after the search, that he "showed A.J. six photos, including [Houser's] Colorado DMV photo," one at a time.

¶ 77 Houser's first attorney filed a motion to suppress A.J.'s out-of-court identification as impermissibly suggestive, but later requested that the motion "be tabled for the time being until Ryan shows up to testify." Houser's second attorney withdrew the motion to suppress during a hearing on the issue and explained to the court that, after discussing the photo identification with the prosecutor,

he was satisfied — based on the prosecutor's reputation — there were no issues related to the lineup.

¶ 78    Houser argues he was prejudiced because his counsel never called Ryan to testify whether he showed A.J. a single photo — which may have been impermissibly suggestive and could have invalidated the warrant used to search his home — or six photographs, as the prosecution contended.

¶ 79    Because this allegation, if true, could support a claim that his counsel's conduct was deficient for failing to challenge a potentially improper out-of-court identification based upon a prosecutor's reputation, Houser is entitled to a hearing on the merits of this claim. *See White*, 766 P.2d at 635. Thus, we remand this claim to the postconviction court for a hearing on the merits.

2.    Failure to Challenge the State's Alleged Outrageous Conduct

¶ 80    Houser contends that he is entitled to a hearing on his claim that his counsel was ineffective for failing to challenge the prosecution's alleged "outrageous conduct." Houser argues that the prosecution "committed outrageous conduct by pretending to be the victim in the case, intruding on Houser's attorney[-]client relationship . . . and interfering with Houser's right to counsel." He

35

alleges, and the record reflects, that the lead police officer in the case, Dea Aragon, investigated Charles Leidner, Houser's first attorney, for alleged witness intimidation of A.J.

¶ 81    The People contend that Aragon initiated the investigation after A.J.'s mother contacted the Douglas County Sheriff's Office to report a threatening call from Leidner and his investigator, in which the men told her that, if A.J. testified, they would "drag [her] over the coals, embarrass her, and eat her alive." The men also allegedly threatened to charge A.J. and her mother with federal tax evasion.

¶ 82    Following Aragon's investigation, a special prosecutor filed a motion to disqualify Leidner from further representation of Houser. Houser, then represented by conflict-free counsel, requested that Leidner remain his attorney. Although the court denied the prosecutor's motion to disqualify Leidner, Leidner later moved to withdraw as Houser's counsel. The trial court granted the motion and Scott Reisch succeeded Leidner as Houser's lawyer.

¶ 83    Houser argues he was prejudiced because Reisch failed to argue that the prosecution's conduct in allegedly pressuring Leidner to withdraw from the case was outrageous. Houser asserts that, "[h]ad Reisch successfully litigated this claim, it could have resulted

36

in the dismissal of [the] charge[] against Houser" because the remedy for a prosecutor's outrageous conduct is dismissal of the charges. *See United States v. Russell*, 411 U.S. 423, 431 (1973). The postconviction court denied Houser's claim because it concluded that the prosecution's conduct was not outrageous.

¶ 84 The proper question, however, is whether Houser's allegation, if true, would provide a basis for an ineffective assistance claim. We conclude it would and, therefore, remand the claim to the postconviction court for a hearing on the merits.

## IV. Conclusion

¶ 85 The postconviction court's denial of Houser's Crim. P. 35(c) motion is affirmed except as to Houser's right to a hearing on his claims that his counsel was ineffective for (a) not challenging A.J.'s out-of-court identification of Houser and the search warrant resting on such identification and (b) not challenging the prosecution's alleged outrageous conduct. The case is remanded to the postconviction court for a hearing on those claims.

JUDGE FOX concurs.

JUDGE BERGER concurs in part and dissents in part.

37

JUDGE BERGER, concurring in part and dissenting in part.

¶ 86 This is the majority's central holding: "We hold that an attorney cannot be deemed ineffective solely because he or she did not take positions unsupported or not 'clearly foreshadowed' by then-existing law." *Supra* ¶ 2. This new bright line rule is not consistent with Crim. P. 35(c). Unless reversed by the supreme court, this new rule will have long-lasting consequences that are at odds with the language of Crim. P. 35(c), the beneficent purposes underlying that rule, and the bedrock constitutional guarantee of reasonably effective assistance of counsel.

## I. Postconviction Claims

¶ 87 In his postconviction motion and on this appeal, Houser claims that his counsel was ineffective for failing to raise four constitutional arguments: (1) his conviction violated his equal protection rights; (2) his conviction should be vacated because the patronizing a prostituted child statute is unconstitutionally vague; (3) the Colorado Sex Offender Lifetime Supervision Act of 1998 (SOLSA) and section 18-7-407, C.R.S. 2019, as applied to him, violated his substantive due process rights; and (4) his sentence under SOLSA violated his rights under the Eighth Amendment and

38

article II, section 20 of the Colorado Constitution.[1]  Although the majority grants limited relief to Houser and remands for an evidentiary hearing on certain other ineffective assistance claims, it rejects, without a hearing and as a matter of law, every one of the claims described above.

¶ 88    If any one of the constitutional claims underpinning his ineffective assistance of counsel claims fails, the related ineffective assistance claim necessarily fails as well.  In that event, it would be impossible to satisfy the prejudice requirement under *Strickland v. Washington,* 466 U.S. 668 (1984).

¶ 89    But if any of Houser's underlying constitutional claims are meritorious, then there is a reasonable probability that, but for counsel's failure to raise them, the outcome of the trial would have been different.  *Strickland,* 466 U.S. at 694-95.  Thus, if any of Houser's underlying constitutional claims would have succeeded, he must be given the opportunity, at an evidentiary hearing, to

---

[1] Houser also advances other claims, including direct constitutional claims.  I agree with the majority that all but one of the direct constitutional claims are successive because they could have been brought on direct appeal.  Crim. P. 35(c)(3)(VII).  I also agree with the majority's disposition of those claims not addressed in this dissent.

prove that his counsel's performance was deficient.  Instead, the majority's newly created rule bars all of these claims.

    II.    The Majority's New Rule Regarding Constitutional Claims is Inconsistent with Existing Law, Unworkable, and Unwarranted

¶ 90    The majority's new rule cuts directly against the express language of Crim. P. 35(c)(2)(I), which states that "every person convicted of a crime is entitled as a matter of right to make application for postconviction review upon the grounds . . . [t]hat the conviction was obtained or sentence imposed in violation of the Constitution or laws of the United States or the constitution or laws of this state."

¶ 91    Postconviction remedies are designed "to prevent constitutional injustice." *Edwards v. People*, 129 P.3d 977, 982 (Colo. 2006) (quoting *People v. Rodriguez*, 914 P.2d 230, 252 (Colo. 1996)).  A rule that would bar consideration of the merits of Houser's ineffective assistance claims is inconsistent with the broad, remedial purposes of Crim. P. 35(c).

¶ 92    It is further inconsistent with the Sixth Amendment's guarantee to criminal defendants of reasonably effective assistance of counsel.  U.S. Const. amend. VI.  A defendant is not entitled to

the best criminal lawyer in a given jurisdiction; a defendant is entitled to the "reasonably effective assistance" of counsel. *Strickland,* 466 U.S. at 687. From the established proposition that a defendant is entitled only to reasonably effective counsel, the majority reasons that in every case a lawyer's failure to raise claims that have not been accepted or "clearly foreshadowed" in that jurisdiction (or in a controlling jurisdiction) can never constitute ineffective assistance. While the majority's insistence on not raising the constitutionally required level of performance may help courts address frivolous claims more efficiently, the cure is worse than the disease.

¶ 93 First, and contrary to the majority opinion, it is entirely conceivable that the failure to raise a meritorious constitutional claim could be objectively unreasonable, even if such claim had not been previously road-mapped for counsel in a controlling, published decision. The determination of whether counsel's failure to raise such a claim was reasonable "present[s] mixed questions of law and fact." *Dunlap v. People,* 173 P.3d 1054, 1063 (Colo. 2007). And the Colorado Supreme Court has recognized that appellate courts will rarely be in the position to decide such inherently factual questions.

41

*Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003). While sometimes the trial record will clearly demonstrate lack of prejudice, "[u]nless the issue was expressly litigated . . . , it is far less likely that a trial record will demonstrate that potentially prejudicial acts or omissions of counsel were not only strategic choices but were ones that were reasonable in light of the law and facts." *Id.* Thus, we cannot reject such inherently factual claims as a matter of law.

¶ 94    Second, an allegation of ineffective assistance premised on counsel's failure to raise a constitutional attack on the conviction does not without more (actually, much more) establish ineffective assistance. The majority states that anything less than its categorical prohibition would result in a situation in which "a defendant would be entitled to a hearing on any Crim. P. 35(c) claim for ineffective assistance merely by arguing that counsel failed to raise a constitutional argument with any potential merit." *Supra* ¶ 34. But that is not the case.

¶ 95    In order to be entitled to a hearing, the defendant must first establish that the underlying constitutional claim is meritorious and that, but for counsel's failure to raise it, the outcome of the proceeding would have been different. *Strickland,* 466 U.S. at

42

694-95. If a controlling court such as the United States Supreme Court or the Colorado Supreme Court has not accepted the constitutional theory, the task is even more difficult, and in the vast majority of cases, the claim will fail. But the fact that the burden is daunting, and that most such challenges will fail for any number of reasons, is not a warrant for creating, as the majority has done, a rule that prohibits, as a matter of law, all such challenges.

¶ 96 Once the defendant has established the merits of the underlying constitutional claim, then the defendant must meet the high bar of establishing that counsel was deficient in failing to raise that claim. *Id.* at 687-91. As discussed above, this determination is properly the subject of a hearing.

¶ 97 The majority contends that this approach would "lower the bar for proving professional negligence." *Supra* ¶ 36. Apart from the fact that this is simply irrelevant to the question of whether Houser received effective assistance of counsel, it is untrue. Even when the defendant has established the merits of the underlying claim and a reasonable probability that the failure to raise the claim affected the outcome of the proceedings, the defendant must still establish, as

always, that the failure to raise such claim "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

¶ 98 To reach its overbroad holding, the majority relies on non-controlling cases from other jurisdictions purportedly holding that a "lawyer does not perform deficiently by 'failing to raise novel arguments that are unsupported by then-existing precedent.'" *Supra* ¶ 30 (quoting *United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019)). But unlike the majority, many of these jurisdictions have also recognized the limits of such a broad rule and the nuances associated with these ineffective assistance challenges. For example, in *Morris*, the court stated that "counsel sometimes will be required to make arguments 'even in the absence of decisive precedent.'" *Morris*, 917 F.3d at 823-24 (quoting *United States v. Carthorne*, 878 F.3d 458, 465-66 (4th Cir. 2017)). Indeed, unlike the majority, the Seventh Circuit has recognized that a lack of precedent supporting a defendant's ineffective assistance claim is "*only half the picture,*" and that a "dearth" of precedent should have indicated to defense counsel that the facts and circumstances of that case were "unusual" and distinguishable from existing case

law. *Shaw v. Wilson,* 721 F.3d 908, 916-17 (7th Cir. 2013) (emphasis added).

¶ 99    If any of Houser's constitutional claims that underlie his ineffective assistance of counsel claims have merit, he should be given an opportunity to convince a district court judge, based on evidence, including expert testimony, that the failure to raise those meritorious claims constituted deficient performance under the first prong of *Strickland.*

¶ 100    I now proceed to analyze the constitutional claims that Houser claims should have been advanced on his behalf but were not.[2]

### III.    Equal Protection

¶ 101    Houser claims that he was deprived of equal protection of the law when he was punished for violating the statute that prohibits patronizing a child prostitute when that same conduct is also criminalized by another statute that carries a much lower penalty.

---

[2] Because the constitutional questions that are determinative of whether Houser can prove prejudice under the second prong of *Strickland v. Washington,* 466 U.S. 668 (1984), are questions of law, there is no reason to remand to the postconviction court to resolve them. This court stands in as good a position as the postconviction court in that respect.

¶ 102    This is not a novel constitutional claim.  The Colorado

Supreme Court has repeatedly held that "Colorado's guarantee of

equal protection is violated where two criminal statutes proscribe

identical conduct, yet one punishes that conduct more harshly."

*Dean v. People*, 2016 CO 14, ¶ 14.

¶ 103    More specifically, Houser argues that his conviction violates

his equal protection rights under the Colorado Constitution because

the patronizing statute criminalizes the same conduct as the

soliciting a child prostitute statute, while imposing a harsher

penalty.[3]

¶ 104    The statutes, however, differ in a key respect.  Patronizing

requires that the child prostitute actually perform, offer, or agree to

perform a sex act in exchange for money.  § 18-7-406(1)(a), C.R.S.

2019; *see* § 18-7-401(6), (7), C.R.S. 2019.  Soliciting does not.  § 18-

---

[3] Unlike the United States Constitution, the Colorado Constitution
contains no express equal protection clause, but the Colorado
Supreme Court has construed the due process clause of the
Colorado Constitution to imply a similar guarantee.  *Dean v. People*,
2016 CO 14, ¶ 11.  Colorado courts have construed the equal
protection guarantees under the Colorado Constitution more
broadly than those available under the United States Constitution.
*People v. Stewart*, 55 P.3d 107, 114 (Colo. 2002) (citing *United
States v. Batchelder*, 442 U.S. 114 (1979)).

7-402(1)(a), C.R.S. 2019.  Thus, a defendant is punished more severely under the patronizing statute for *successfully* inducing the child to respond to an offer for money in exchange for sex.[4]  "The general assembly may establish more severe penalties for acts that it believes have graver consequences, even if the differences are only a matter of degree."  *People v. Stewart*, 55 P.3d 107, 114-15 (Colo. 2002).  Accordingly, I would reject this specific claim.

¶ 105    But, as analyzed in the recent case of *People v. Maloy*, 2020 COA 71, other child prostitution statutes prohibit the same conduct engaged in by Houser but impose non-SOLSA penalties.  A person patronizes a child prostitute in violation of section 18-7-406(1)(a) if such person "[e]ngages in an act which is prostitution of a child," as defined in section 18-7-401(7), or an act that is prostitution "by a child," as defined in section 18-7-401(6).  In *Maloy*, the defendant was convicted of patronizing a child prostitute under the "prostitution of a child" definition for inducing a child to perform certain sexual acts (with third persons, not the defendant), or

---

[4] "[A]ctual performance of a sexual act is not necessary; a mere offer or agreement to perform is sufficient, provided money has been promised."  *People v. Houser*, 2013 COA 11, ¶ 84.

inducing her to allow others to perform such acts, by coercion or threat or intimidation or in exchange for money or other thing of value. *Id.* at ¶ 21 (citing § 18-7-401(7)). The division concluded that the conviction violated equal protection principles under the Colorado Constitution because section 18-7-403(1)(a), C.R.S. 2019 (pandering of a child), and section 18-7-405.5, C.R.S. 2019 (inducement of child prostitution), as applied to the defendant, criminalize the same conduct but do not require an indeterminate life sentence under SOLSA. *Id.* at ¶ 21.

¶ 106    Houser was convicted of patronizing under the "prostitution by a child" subsection, but this does not change the result of the equal protection analysis.

> "Prostitution by a child" means either a child performing or offering or agreeing to perform any act of sexual intercourse, fellatio, cunnilingus, masturbation, or anal intercourse with any person not the child's spouse in exchange for money or other thing of value or any person performing or offering or agreeing to perform any act of sexual intercourse, fellatio, cunnilingus, masturbation, or anal intercourse with any child not the person's spouse in exchange for money or other thing of value.

§ 18-7-401(6).

¶ 107　This language is, admittedly, confusing.  How can someone other than a child prostitute engage in an act that is "prostitution by a child?"  As I understand it, section 18-7-406(1)(a) and section 18-7-401(6) together prohibit any action that results in an act of prostitution by a child.  In this case, the jury found that Houser engaged in some act that resulted in a child offering or agreeing to perform a sex act in exchange for money.[5]  Like in *Maloy*, this conduct could also form the basis for non-SOLSA charges under the pandering and inducement statutes.

¶ 108　The pandering statute prohibits someone, "for money or other thing of value," from "[i]nducing a child by menacing or criminal intimidation to commit prostitution."[6]  § 18-7-403(1)(a).  Admittedly, Houser did not act "for money or other thing of value."  Nor did he realize an act of child prostitution through "menacing or intimidation."  But, for the reasons described in *Maloy*, these distinctions are meaningless for purposes of the equal protection

---

[5] On this record, we cannot know whether the jury also concluded that Houser had sex with A.J.

[6] Pandering, under section 18-7-403(1)(a), C.R.S. 2019, is a class 2 felony, but it is not an offense subject to punishment under the Colorado Sex Offender Lifetime Supervision Act of 1998 (SOLSA). §§ 18-1.3-1003(5)(a), -1004(1)(a), C.R.S. 2019.

analysis. *Maloy*, ¶¶ 27-29. Houser should not be subjected to greater punishment when his conviction required proof of fewer elements and his conduct was less blameworthy than that of someone convicted of pandering. *Id.* at ¶¶ 28-29.

¶ 109 A person commits inducement of child prostitution if such person, "by word or action, other than [by menacing or criminal intimidation], induces a child to engage in an act which is prostitution by a child." § 18-7-405.5. As discussed above, that is *exactly* the conduct Houser was convicted of here.

¶ 110 Accordingly, and consistent with the analysis in *Maloy*, Houser's conviction and sentence for patronizing a child prostitute violated his right to equal protection of the law. If, but only if, Houser can establish that his counsel's performance was deficient, he is entitled to relief.

## IV. Substantive Due Process

¶ 111 SOLSA and section 18-7-407, as applied to Houser, violate his substantive due process rights.

¶ 112 This, again, is not a novel claim. Indeed, variations of this argument are raised in almost every appeal to this court in which a SOLSA sentence was imposed. While other divisions of this court

have rejected variations of this argument, they have not addressed the facts and circumstances presented here.

¶ 113    Various divisions of this court have rejected facial substantive due process challenges to SOLSA.[7]  However, many did so without independent analysis, relying only on the reasoning of earlier divisions.  *People v. Knobee*, 2020 COA 7, ¶ 63; *People v. Sabell*, 2018 COA 85; *People v. Relaford*, 2016 COA 99, ¶ 72; *People v. Torrez*, 2013 COA 37, ¶ 88; *People v. Collins*, 250 P.3d 668, 679 (Colo. App. 2010); *People v. Villa*, 240 P.3d 343, 359 (Colo. App. 2009); *People v. Firth*, 205 P.3d 445, 452 (Colo. App. 2008).  The lead cases, *People v. Oglethorpe*, 87 P.3d 129, 133 (Colo. App. 2003), and *People v. Strean*, 74 P.3d 387, 393 (Colo. App. 2002), addressed only facial challenges.[8]  The Colorado Supreme Court has never weighed in on these questions.  Accordingly, Houser's counsel could have raised the narrow, as-applied challenge that

---

[7] Some of these cases, *e.g.*, *People v. Sabell*, 2018 COA 85, purport to address an as-applied challenge to SOLSA, but they do not engage in any as-applied analysis, and instead simply rely on the decisions of earlier divisions to reject the claim.
[8] *People v. Oglethorpe*, 87 P.3d 129, 133 (Colo. App. 2003), addresses as-applied challenges to SOLSA, but not an as-applied substantive due process challenge.

51

Houser now raises on appeal without departing from the broader holdings in *Oglethorpe* and *Strean*.

¶ 114    "[T]he touchstone of due process is protection of the individual against arbitrary action of government," *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (citation omitted), and "sanctions which are downright irrational," *Hudson v. United States*, 522 U.S. 93, 103 (1997).  Substantive due process prohibits the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.  *People v. Garlotte*, 958 P.2d 469, 474 (Colo. App. 1997).  When no fundamental right is implicated, substantive due process requires that legislation bear a rational relationship to a legitimate governmental interest.  *People v. Zinn*, 843 P.2d 1351, 1353 (Colo. 1993).

¶ 115    Under SOLSA and section 18-7-407, which prohibited Houser from raising the defense that he believed A.J. was of age at trial, Houser was convicted of the felony of patronizing a child prostitute and sentenced to an indeterminate life sentence without any proof that he had intended to patronize a *child* prostitute.  If he had only been found guilty of patronizing an *adult* prostitute, he would have

been convicted of less than a misdemeanor — a class 1 petty offense. § 18-7-205, C.R.S. 2006. Thus, section 18-7-407 imposed strict liability for an element of the offense that transformed Houser's crime from a petty offense to a felony bearing an indeterminate life sentence.

¶ 116 In my view, imposing an indeterminate life sentence without any proof that Houser actually intended to commit the element of the crime requiring the indeterminate life sentence both shocks the conscience and offends notions of ordered liberty.[9]

¶ 117 Moreover, under the facts of this case, the relationship between Houser's conduct that was proved at trial and the indeterminate life sentence exceeds the bounds of rationality and thus the protections of the Due Process Clause. SOLSA's indeterminate sentencing requirement is based on the presumption

---

[9] Questions regarding the constitutionality of strict liability criminal statutes that impose substantial penalties are complex, and many related questions remain unresolved by both the United States Supreme Court and the Colorado Supreme Court. *See People v. Manzo*, 144 P.3d 551, 554-59 (Colo. 2006) (recognizing that public welfare offenses are "a constitutionally permissible type of strict liability offense"); Alan C. Michaels, *Constitutional Innocence*, 112 Harv. L. Rev. 828, 834 (1999). But here, the issue is quite narrow and does not require an extensive analysis of the limits of the General Assembly's power to define strict liability crimes.

that the "majority" of sex offenders, if untreated, are likely to reoffend. § 18-1.3-1001, C.R.S. 2019. But in this case, there has never been an adjudication that Houser intended to patronize a child prostitute. Nevertheless, SOLSA presumes that he is likely to again act as a sex offender if untreated and requires an indeterminate life sentence or, in the discretion of the district court, indeterminate probation. Without proof of intent, there is no rational relationship between the facts proved at trial and the sentence required by SOLSA.

¶ 118    Irrespective of whether the Due Process Clause limits a state's power to define a strict liability defense that imposes a life sentence, here SOLSA and section 18-7-407 create the perverse and patently irrational result by which a defendant cannot defend himself at trial by arguing that he never intended to commit the offense, but then can only get out of prison and off parole if he admits to that same offense.[10]  The Due Process Clause demands more than such a Kafkaesque result.

---

[10] This is materially different from the ordinary SOLSA situation in which a defendant is convicted of an offense that prescribes mens rea components while the defendant maintains his innocence.

## V. Grossly Disproportionate Punishment

¶ 119    Houser argues that his counsel was ineffective at sentencing because his counsel failed to argue that an indeterminate sentence was "not proportionate to his actual criminal conduct" in violation of the Eighth Amendment. The effective life sentence imposed on Houser raises obvious proportionality concerns. The majority does not specifically refer to this claim but presumably rejects it based on its newly formulated rule.

¶ 120    While I agree with Houser that his sentence creates the inference of gross disproportionality, I cannot, on this record, conclude that his sentence violates the Eighth Amendment. That determination requires evidence to be presented to the postconviction court.

¶ 121    The legislature's authority to prescribe punishment "is limited by the principle of proportionality that is embedded in the constitutional prohibition against the infliction of cruel and unusual punishment." *Wells-Yates v. People*, 2019 CO 90M, ¶ 1. The Eighth Amendment prohibits "not only barbaric punishments,

---

Here, no court has ever adjudicated whether Houser ever had any intent to patronize a child prostitute.

but also sentences that are disproportionate to the crime committed."[11] *Id.* at ¶ 5 (quoting *Solem v. Helm*, 463 U.S. 277, 284 (1983)). "Simply put . . . the punishment should fit the crime." *Id.* at ¶ 1.

¶ 122    In analyzing whether the punishment fits the crime, courts must first weigh the gravity or seriousness of the offense and the harshness of the penalty and determine whether this comparison leads to an inference of gross disproportionality (abbreviated proportionality review). *Id.* at ¶¶ 11-15. If it does, then courts must consider the sentences for other crimes in the same jurisdiction and sentences for the same crime in other jurisdictions (extended proportionality review). *Id.* at ¶¶ 15-17.

A.    The Gravity or Seriousness of the Offense

¶ 123    To weigh the gravity or seriousness of the offense, courts must consider "the harm caused or threatened to the victim or society," as well as the "culpability of the offender." *Id.* at ¶ 12 (quoting *Solem*, 463 U.S. at 292).[12] Without a doubt, patronizing a child

---

[11] Article II, section 20 of the Colorado Constitution is identical to the Eighth Amendment.
[12] Unlike some crimes, patronizing a child prostitute is not per se grave or serious. *Wells-Yates v. People*, 2019 CO 90M, ¶ 65.

prostitute threatens serious harm to both the victim and society. The defendant's moral or criminal culpability, however, depends largely on the defendant's state of mind. *See Solem*, 463 U.S. at 293; *Wells-Yates*, ¶ 12.

¶ 124    In this case, we know only that Houser intended to patronize a prostitute. Because section 18-7-407 precluded Houser from raising the defense that he did not know A.J. was underage, the jury did not reach the question of whether Houser knew A.J. was underage, and we cannot reach that conclusion. While this conduct is illegal, it is only a petty offense, whereas patronizing a child prostitute is a class 3 felony punishable by an indeterminate sentence in prison.

## B.    The Harshness of the Penalty

¶ 125    Houser's indeterminate life sentence is one of the harshest sentences available under Colorado's criminal code because it is, in effect, a life sentence. While we must consider Houser's parole eligibility in weighing the severity of the sentence, *Wells-Yates*, ¶ 14, we must also acknowledge the sentence's upper limit and the realities of a SOLSA sentence.

¶ 126    In the equal protection context, courts "weigh[] the relative harshness of a penalty by looking principally to the overall potential term of imprisonment, not the timing of parole eligibility." *Dean*, ¶ 28.  I see no reason not to do so here, and the upper limit is incarceration for the rest of Houser's natural life.

¶ 127    Furthermore, under SOLSA, a sex offender may not be released on parole unless the parole board determines that the offender "has successfully progressed in treatment." § 18-1.3-1006(1)(a), C.R.S. 2019.  If Houser continues to maintain, as he has since he was charged, that he intended only to patronize an adult prostitute — a claim that has never been adjudicated by any court — and has no sexual interest in children, it is difficult to see how he could ever successfully progress in treatment and thus be released from prison.

¶ 128    Weighing these factors, I conclude that sentencing Houser to an indeterminate life sentence without establishing that he intended to patronize a child prostitute leads to an inference of gross disproportionality between the gravity or seriousness of the crime and the harshness of the penalty.

¶ 129    On this record, however, I cannot complete the second step of the analysis mandated by *Wells-Yates*. "In the absence of a need for . . . a detailed comparison of sentences imposed for . . . crimes in this or other jurisdictions, an appellate court is as well positioned as a trial court to conduct a proportionality review." *People v. Gaskins*, 825 P.2d 30, 37-38 (Colo. 1992), *abrogated on other grounds by Wells-Yates*, 2019 CO 90M. Under *Wells-Yates*, ¶ 17, the determination of whether Houser's sentence constitutes unconstitutionally excessive punishment requires an analysis of the sentences for other crimes in the same jurisdiction and sentences for the same crime in other jurisdictions — facts not in the record before us.

## VI.    Conclusion

¶ 130    For these reasons, I would remand to the postconviction court for a determination of whether Houser's counsel was deficient for failing to raise equal protection and substantive due process challenges to his conviction and sentence. If the postconviction court determined based on evidence presented at a hearing that counsel provided ineffective assistance in failing to raise these claims, Houser would be constitutionally entitled to relief.

¶ 131    On the Eighth Amendment claim, I would remand to the

postconviction court to conduct an extended proportionality review.

If the postconviction court then concluded that the sentence was

unconstitutionally disproportionate, it would be required to hold a

hearing to determine whether Houser's counsel was deficient for

failing to raise an Eighth Amendment claim.

¶ 132    I respectfully dissent from the majority's contrary disposition.